816 So.2d 338 (2002)
Johnnie JACKSON
v.
QUIKRETE PRODUCTS, INC.
No. 2001-CA-1181.
Court of Appeal of Louisiana, Fourth Circuit.
April 17, 2002.
*340 Jeffrey C. Napolitano, Juge, Napolitano, Guilbeau, Ruli & Frieman, Metairie, LA, for Defendants/Appellants.
Joseph G. Albe, Benjamin E. Clayton, IV, Metairie, LA, for Plaintiff/Appellee.
(Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge CHARLES R. JONES, and Judge PATRICIA RIVET MURRAY).
BYRNES, Chief Judge.
In this workers' compensation case, the defendants, Quikrete Products, Inc. ("Quikrete") and its insurer, Atlantic Mutual Insurance Company ("Atlantic Mutual"), appeal from the January 10, 2001 judgment awarding disability benefits to the employee, Johnnie Jackson. We affirm.
Around 3:30 a.m. on March 8, 1999, an argument and fistfight arose between Johnnie Jackson and a co-employee, Lawrence Bates, at work. Quikrete produced cement, dirt and stone products. Jackson's position as a night lead man gave him the responsibility to relate his superiors' instructions to the crew workers on the shift. Previously, Bates and Jackson *341 developed a personality conflict and did not like each other.
Jackson testified that he no longer asked Bates to do anything on the job. He previously reported Bates to Jackson's supervisor on several occasions, resulting in verbal warnings to Bates. The incident at issue was the first time that their argument led to a fistfight, and Bates and Jackson were terminated as a result of the conflict.
Quikrete declined to pay Jackson workers' compensation claim based on injuries incurred from the fistfight. After a trial on August 18, 2000, the workers' compensation judge found that Jackson was injured in the course and scope of his employment. The judge ruled that Jackson was entitled to $367 weekly compensation indemnity benefits from the date of injury, March 8, 1999, until he can be examined by an ophthalmologist of his choice to render an opinion as to Jackson's current medical status and as to whether or not Jackson can return to work. The judgment also found that Jackson is entitled to vocational rehabilitation services depending on the ophthalmologist's opinion. The judgment awarded Jackson penalties of the greater of $2,000 or 12% of unpaid medical benefits, and the greater of $2,000 or 12% of back due indemnity benefits together with interest thereon, as well as a $15,800 attorneys' fee based on the finding that Quikrete declined to pay benefits for no sound or legal reason. Quikrete and Atlantic Mutual's appeal followed.
On appeal Quikrete and Atlantic Mutual contend that the workers' compensation judge erred in: (1) finding that Jackson's accident was during the course and scope of his employment; (2) finding that Jackson's eye injury rendered him disabled and awarding Jackson compensation benefits; (3) awarding Jackson vocational rehabilitation benefits; and (4) awarding penalties and attorneys' fees.

Burden of Proof and Standard of Review
La. R.S. 23:1031A provides compensation if an employee sustains personal injury as the result of an accident arising out of and in the course of employment. Daspit v. Southern Eagle Sales & Services, Inc., 98-1685 (La.App. 4 Cir. 1/20/99), 726 So.2d 1079, writ denied, XXXX-XXXX (La.6/15/01), 793 So.2d 1245. The worker's testimony alone may be sufficient to discharge the burden of proving that he sustained a work-related injury, provided that two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and (2) the claimant's testimony is corroborated by the circumstances following the alleged incident. Haws v. Professional Sewer Rehabilitation, Inc., 9-2846 (La.App. 1 Cir. 2/18/00), 763 So.2d 683; Moss v. Winward Hosp., 98-401 (La. App. 3 Cir. 10/7/98) 720 So.2d 107, writ denied 98-2812 (La.1/8/99), 735 So.2d 635. In determining whether a worker has shown by a preponderance of the evidence that an injury-causing accident occurred in the course and scope of employment, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a claimant's testimony is accorded great weight. Parfait v. Gulf Island Fabrication, Inc., 97-2104 (La.App. 1 Cir. 1/6/99), 733 So.2d 11.
Claimants in a workers' compensation proceeding have the initial burden of proof as to causation. Dean v. K-Mart Corp., 97-2850 (La.App. 4 Cir. 7/29/98), 720 So.2d 349, writ denied 98-2314 (La.11/13/98), 731 So.2d 265. The workers' compensation claimant must prove by a preponderance of the evidence that an employment accident had a causal relationship to the disability; if the testimony *342 leaves the probabilities evenly balanced, the claimant has failed to carry the burden of persuasion. Harvey v. Bogalusa Concrete, Inc., 97-2945 (La.App. 1 Cir. 9/25/98), 719 So.2d 1130. Once the injured employee carries his initial burden of proving a causal connection between the accident and his disabling condition, the burden shifts to the employer to produce evidence that it is more probable than not that the injury was not caused by a work related accident. Burrell v. Evans Industries, 99-1194 (La.App. 5 Cir. 4/25/00), 761 So.2d 618, writ denied XXXX-XXXX (La.6/30/00), 766 So.2d 545.
Causation is a question of fact. Dean v. K-Mart Corp., supra. The appellate court's review of the findings of fact is governed by the manifest error or clearly erroneous standard in a workers' compensation case. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733, 737. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987).

Work Related Accident; Course and Scope of Employment
Quikrete and Atlantic Mutual argue that the workers' compensation judge erred in awarding Jackson benefits without first determining that the altercation and injuries arose out of a personal dispute unrelated to employment pursuant to La. R.S. 23:1031(E).[1] Quikrete and Atlantic Mutual complain that the fistfight was personal in nature and directly resulted in retaliation for personal comments that Jackson made regarding Bates' mother.
The incident occurred when the crew was going to pack sand in bags; however, the conveyor belt was not working. Jackson went to summon two maintenance men. While they were waiting, Jackson asked the crew members to put bags on the machine and to cut some of them open.
Jackson asserts that the crew started working with the bags. Jackson avers that Bates yelled that the men didn't have to do what Jackson told them. Jackson states that when Jackson went to report Bates to Jackson's supervisor, Bates went up to Jackson and continued yelling. Jackson stopped, and then resumed walking toward the supervisor's office.
Quikrete and Atlantic Mutual maintain that because Jackson called Bates' mother a derogatory name, the fistfight was personal in nature and resulted from Bates' retaliation for Jackson's personal comments about Bates' mother. Quikrete and Atlantic Mutual assert that co-workers, Calvin Warner and Darren Marinoeaux, stated that in response to Bates' cursing, Jackson cursed Bates, used a derogatory name against Bates' mother, and Jackson put up his guards, i.e., his hands or fists, and said "come on." The defendants argue that Jackson provoked Bates' attack.
According to Jackson, Bates ran up to Jackson and started hitting him. They exchanged words, but Jackson denies having said anything about Bates' mother. Jackson related that he did not hit Bates back, but Jackson put up his hands to protect his face. Jackson described Bates as being six feet, seven inches tall and weighing about 300 pounds. Jackson said *343 that Bates threw him down on some pallets and continued hitting him until co-workers pulled Bates off of Jackson.
The parties provided conflicting evidence. Although Quikrete and Atlantic Mutual claim that Jackson called Bates's mother a derogatory term that made the altercation personal, Jackson maintains that the confrontation originated from the work-related task that Jackson instructed the crew to perform. The exchange occurred when Jackson went to report Bates to the supervisor. The workers' compensation judge stated that: "Well, he (the defense) can use him (Warner) as impeachment. I could tell you right now he could say what he wants. I don't believe a word he said on the stand today...." Warner agreed that he had been convicted of a felony for possession of a firearm and spent ten years in Angola.
When the fact finder's decision in the workers' compensation action is based on the conclusion to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. LaPrarie v. Pony Exp. Courier, 628 So.2d 192 (La.App. 2 Cir. 1993), writs denied 94-0014 & 94-0024 (La.2/25/94), 632 So.2d 765.
In determining whether an accident arises out of employment, the workers' compensation judge must focus on the character or source of risk which gives rise to injury and on the relationship of the risk to the nature of the claimant's employment. La. R.S. 23:1031 A; Lyons v. Bechtel Corp., 2000 00364 (La.App. 3 Cir. 12/27/00), 788 So.2d 34, writ denied, 787 So.2d 996 (La.3/23/01). In that case, the Louisiana Third Circuit found that the injuries caused by the supervisor to the claimant during a fight were work-related, and therefore, compensable where the fight arose out of a discussion regarding the claimant's work, and the fight took place at a time and in a place where the employer dictated that the parties must be as part of their employment.
In Baker Hughes, Inc. v. Ardoin, 99-1217, 99-1218 (La.App. 3 Cir. 2/2/00), 758 So.2d 830, writ granted in part, denied in part, XXXX-XXXX (La.4/20/00), 759 So.2d 771, the Third Circuit concluded that the accident occurred during the claimant's employment where the accident report filled out by the claimant stated that he was injured when his co-workers, while engaging in horseplay, poked him in his side.[2] The physician's report supported the claimant's allegations. The medical report stated that "he sustained an injury" and that it was a work-related injury that added to his prior problem caused in a non-work related automobile accident.
In Stacy v. Minit Oil Change, 31,985 (La.App. 2 Cir. 6/16/99), 742 So.2d 929, the Louisiana Second Circuit held that the claimant's injury was employment-related, rather than a result of a dispute with a co-worker over matters unrelated to employment, where the co-worker accused the claimant of trying to be boss when he grabbed the claimant while exiting a vehicle, and the claimant brought the vehicle to the co-worker pursuant to a customer's request.
*344 In the present case, the parties stipulated to the April 1, 1999 letter written by Charles A. Schaff, the claims representative of Atlantic Mutual, to the claimant's first attorney. The letter stated in part:
... Mr. Jackson indicates in his recorded statement that the incident occurred because Mr. Bates was not performing his job and Mr. Jackson indicated to him that he was going to report him to management. If this is correct, the incident may very well have arisen out of the employment....
Considering that the altercation originated from Jackson's instructions to the crew, the workers' compensation judge was not clearly wrong in finding that the claimant carried his burden of proof by a preponderance of the evidence that the altercation and injuries were caused or related to the employment and occurred during the course and scope of Jackson's employment.

Disability
Quikrete and Atlantic Mutual contend that the trial court erred in finding that Jackson's eye injury rendered him disabled without medical evidence.
La. R.S. 23:1221(1)(c) provides that:
... compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment....
To recover workers' compensation benefits, an employee must show that he received a personal injury by an accident arising out of and in the course and scope of his employment, and that his injury necessitated medical treatment or rendered the employee disabled, or both. Haws v. Professional Sewer Rehabilitation, Inc., supra. A workers' compensation claimant's disability is presumed to have resulted from an accident if before the accident, the claimant was in good health and commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterwards, provided that there is sufficient medical evidence to show that there is a reasonable possibility of a causal connection between the accident and the disabling condition. Woodrum v. Olive Garden Restaurant, 99-130 (La.App. 5 Cir. 5/19/99), 735 So.2d 911.
It is the workers' compensation court's function to determine the weight to be accorded medical and lay testimony in a workers' compensation claim for an award of disability benefits, and its factual determination should not be disturbed on appellate review unless it is clearly wrong and the trial court has committed manifest error. Starkman v. Munholland United Methodist Church, 97-661 (La.App. 5 Cir. 1/14/98), 707 So.2d 1277, writ denied 98-0400 (La.3/27/98), 716 So.2d 891. Whether the workers' compensation claimant is entitled to temporary total disability benefits is a question of fact that may not be disturbed on appeal, absent manifest error. Sears v. Berg, Inc. 99-457 (La.App. 5 Cir. 9/28/99), 742 So.2d 760.
In the present case, the defendants argue that the workers' compensation judge put the "cart before the horse" by awarding disability benefits before the claimant was found to be disabled.
The workers' compensation judgment stated in part:
IT IS FURTHER ADJUDGED AND DECREED that claimant's injuries rendered him disabled and he is therefore entitled to workers' compensation indemnity benefits ($367.00 per week) from the date of his injury (March 8, *345 1999), together with legal interest on each payment, from the date due until paid, and continuing until such time claimant is seen by an ophthalmologist of his choice who shall render an opinion as to claimant's current medical status of his eye injury and his opinion whether claimant can or cannot re-enter the workforce in gainful employment or self-employment. [Emphasis added.]
The judgment found that "claimant's injuries rendered him disabled" before awarding compensation benefits. The record shows that the claimant was injured on the job. Before the injury, he could see and perform his duties. After the injury, Jackson complained of double vision, that his eyes were sensitive to light, and he had constant headaches. Jackson also experienced pain in his wrists.
In his February 7, 2000, report of Dr. Scott Lanoux, the physician the employer and insurer selected to examine the claimant, he noted that:
... Examination reveals poor vision in both eyes. This is difficult to explain, based on exam, particularly since pt [patient] states he does not have blurriness routinely in left eye. Pupils are normal. SLE is normal. DFE reveals tortuous veins bilaterally which are slightly dilated. There is no sig[nificant] parlour of either optical nerve. The rt optic nerve does look slightly more hyperemic in appearance than the left optic nerve. I have no obvious explanation for this. The peripheral retina is entirely normal. Muscle-balancing testing reveals orthophoria; meaning there is no tendency for deviation of the eyes to explain dble [double] vision. Overall, this patient has a very benign examination. I can find no explanation for double vision.... Certainly I can find no pathology which requires any therapeutic intervention at this time.
Quikrete and Atlantic Mutual maintain that at trial, Jackson claimed that if he looked out of one eye, he did not have double vision. If he looked out of two eyes, he would suffer with double vision. The defendants argue that this conflicts with the medical reports where Jackson complained of double vision only when looking out of his right eye.
The employer and insurer further argue that if Jackson had any problems with his vision, it was caused by some type of nutritional/alcoholic related condition. The employer and insurer refer to the claimant's February 9, 2000 Charity visit. The record contains a February 2000 Charity report hand-written notation that states: "toxic/nutritional/alcohol/optic neuropathy/NTG suspect." It further shows: "OD most likely etiology NTG vs. nutritional/alcohol diplopia vs. optic neuropathy...." This notation was made a year after the accident. At the hearing before the workers' compensation judge, Jackson agreed that he drinks alcohol on a daily basis. Greg Schneller, the plant supervisor at the time of the accident, testified that before Jackson went to the emergency room at East Jefferson General Hospital on the day of the accident, he was given a drug test at the Elmwood Industrial Medicine Clinic. The drug test was negative, indicating that at the time of the accident, no alcohol was found in Jackson's system.
In Clement v. Dynasty Transp., 99-0341 (La.App. 1 Cir. 12/28/99), 756 So.2d 381, writ denied XXXX-XXXX (La.4/20/00), 760 So.2d 344, the employee was entitled to the statutory minimum for workers' compensation benefits, where benefits were impossible to calculate based on evidence in the record, and the testimony revealed that either the employee or employer had records from which the necessary evidence could be obtained.
*346 The issue to be resolved by a reviewing court in a workers' compensation case is not whether the trier of fact was right or wrong, but whether the fact-finder's conclusion was a reasonable one. Jones v. Blue Cross/Blue Shield of Louisiana, 98-0962 (La.App. 1 Cir. 5/14/99), 740 So.2d 163, writ denied 99-1728 (La.9/24/99), 747 So.2d 1127.
In the present case, considering that the workers' compensation judgment awarded $367 weekly from the date of the accident until the employee is examined by his selected ophthamologist, the workers' compensation judgment provided an award for compensation benefits. The employee should not be penalized for the employer's failure to allow him to select and be examined by his own chosen ophthamologist.
The defendants paid for Jackson's treatment in the emergency room at East Jefferson General Hospital on the date of the accident. The emergency room record shows that Jackson had a swollen forehead and face injury. He had a facial contusion and complained of slight diplopia (double vision) of the right eye. Jackson had pain and tenderness in his right thumb, with a slightly decreased range of motion. Jackson's thumb was placed in a Spica splint and Vicoprofen and Keflex were presecribed. The CT scan of Jackson's head showed scalp edema (swelling). His left wrist was painful.
Jackson did not have medical insurance. Starting in August 1999 until May 2000, Jackson was treated at the Medical Center of Louisiana ("Charity") Hospital. The August 13, 1999, Charity medical report provided a history/observations page that refers to an altercation in March, that the right wrist was wrapped with an ace bandage, the left wrist appeared to be asymptomatic with no swelling, and a notation of double vision in the right eye since May. The report shows no acute fracture or dislocation of the wrists, and no acute fracture was identified from the lumbosacral spine series. With respect to the eye examination, the findings indicate: "Questionable defect is seen at the level of the lamina papyracea on the left." Also noted is "partial opacification of the frontal sinus and left maxillary sinus. The soft tissues appear grossly intact." The report reflects: "opacification of the frontal sinus and partial opacification maxillary sinuses are noted along with questionable old fracture of the medial wall of the left orbit...." Ibuprofen was prescribed for pain.
The August 31, 1999 Charity report again notes that the patient was in a fight in March and sustained injuries to his hands. Both wrists had splints and the patient complained of throbbing night pain in the joint. The September 7, 1999 Charity occupational therapy upper extremity evaluation notes that the patient was wearing a prefabricated "cockup" splint on the left wrist. The patient had a wrist sprain and had no relief from pain in four months. No splint was issued from the clinic. The handwritten September 23, 1999 progress report has abbreviations that are difficult to discern. A notation on October 11, 1999 shows that the patient was discharged from occupational therapy in October 1999 "secondary to non-compliance with attendance." An additional handwritten October 14, 1999 Charity report contains abbreviated notations that are unclear. In December 1999, the Charity reports included blood test results and a notation of "diplopia." As previously discussed, a February 2000 Charity report contains the notation of "nutritional/alcohol diplopia vs. optic neuropathy." The report has abbreviations that are not readily discernible. The May 11, 2000 Charity report also contains abbreviated notations.
*347 Dr. Lanoux examined Jackson in February 2000, about eleven months after the injury took place in March 1999. Until Dr. Lanoux's report is supported by additional medical examination of the claimant's selected ophthamologist, the workers' compensation judge was not clearly wrong in basing her award of disability benefits on the claimant's testimony that was supported by the East Jefferson General Hospital March 8, 1999 emergency room report that an injury occurred where Jackson had received a blow to his right eye. The diagnostic test results provided that "A CT of the orbits show a blow-out fracture." Dr. Roberto Martinez's emergency room report notes: "Conclusion: fracture in the floor of the right orbit depressed into the maxillary sinus by approximately 6 mm. Fluid in the right and left maxillary sinuses." Jackson testified that he still has double vision, light sensitivity, headaches and wrist pain.
Under the circumstances of this case, the workers' compensation judge reasonably awarded compensation benefits of $367 weekly from the date of Jackson's injury (March 8, 1999), together with legal interest, until Jackson is examined by the his selected ophthalmologist.

Vocational Rehabilitation Benefits
Quikrete claims that the trial court erred in awarding Jackson vocational rehabilitation benefits under La. R.S. 23:1126 without a finding of whether he could return to certain types of work.
The judgment only awarded vocational rehabilitation based on the finding of the claimant's selected ophthamologist's report. The judgment stated:
IT IS ADJUDGED AND DECREED that based upon the opinion of claimant's ophthalmologist of choice, if claimant can engage in some type of employment, heavy, medium or light duty, defendant is to implement vocational rehabilitation with an aim preparing claimant to return to some type of gainful employment ... [Emphasis added.]
The judgment declared that vocational rehabilitation benefits are awarded if the claimant's chosen ophthalmologist finds that Jackson can engage in some type of employment. Considering the circumstances in this case, including the fact that the claimant has not yet been examined by a physician of his choice, the workers' compensation judge's potential award for vocational rehabilitation is reasonable.

Penalties and Attorneys' Fees
Quikrete argues that the trial court erred in awarding penalties and attorneys' fees.
When an employer refuses to authorize medical treatment for an injured worker, that is reasonable and necessary, attorney fees are warranted. La. R.S. 23:1121.[3] *348 Thibodeaux v. Sunland Const., XXXX-XXXX (La.App. 3 Cir. 4/4/01), 782 So.2d 1203.
An employee has the burden of proving entitlement to statutory penalties and attorney fees for the employer's failure to timely pay workers' compensation benefits. La. R.S. 23: 1201F;[4]Parfait v. Gulf Island Fabrication, Inc., supra. La. R.S. 23:1201F(2) provides for penalties and attorney fees unless the claim is "reasonably controverted." Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 886. The determination of whether an employer/insurer should be cast with penalties and attorneys' fees in a workers' compensation proceeding is a question of fact, and the workers' compensation judge's findings shall not be disturbed on appeal absent manifest error. Lyons, supra.
In Baker Hughes, Inc. v. Ardoin, supra, the Third Circuit concluded that the compensation court should have awarded penalties and attorney fees where the claimant represented untimely payment of benefits, as there was nothing in the record which reasonably controverted the claimant's claim. The accident report filled out by the claimant stated that he was injured when his co-workers, while engaging in horseplay, poked him in his side. The claimant showed the untimely payment of benefits, as there was nothing in the record that reasonably controverted the claimant's claim, and the physician's report supported the claimant's allegations. The medical report stated that "he sustained an injury" and that it was a work-related injury, added to his prior problem caused in a non-work related automobile accident.
The termination of workers' compensation benefits may be considered arbitrary when it appears that further medical information was required to make an exact determination of the claimant's condition. Porter v. Gaylord Chemical Corp., 98-0222 (La.App. 1 Cir. 9/25/98), 721 So.2d 27, writ denied, 98-2712 (La.12/18/98), 734 So.2d 638. An employer's refusal to authorize reasonable and necessary medical treatment for a workers' compensation claimant warrants an award of penalties and attorney fees. Gross v. Maison Blanche, 98-2341 (La. App. 4 Cir. 4/21/99), 732 So.2d 147.
In Allen v. Louisiana Wood Moulding Corp., 29,947 (La.App. 2 Cir. 1/23/98), 706 So.2d 636, the employer's factual contentions *349 regarding the general safety feature of the table saw encasement and the claimant's disobedience to the corporation's safety instructions did not afford the employer a defense to its discontinuance of workers' compensation medical and wage benefits so as to preclude penalties and attorney fees.
In Tillmon v. Thrasher Waterproofing, XXXX-XXXX (La.App. 4 Cir. 3/28/01), 786 So.2d 131, the claimant was entitled to penalties and attorney fees where the employer denied benefits and failed to fulfill an ongoing duty to ascertain the claimant's precise medical condition.
In the present case, the claimant's entitlement to penalties and attorney fees was not controverted by the employer and insurer pursuant to La. R.S. 23:120-1203. The judgment states: ...
Defendant's decision not to pay claimant benefits was for no sound or legal reason, but a classic case of arbitrary and capriciousness, and as such claimant is entitled to penalties ...
The workers' compensation judgment also awarded attorney fees. The emergency room medical report showed that Jackson sustained an injury. It was a work-related injury. The trial court was not clearly wrong in finding that the employer and insurer acted arbitrarily and capriciously in refusing to pay benefits to the claimant and refusing to allow the claimant to be examined by a physician of his choice.
Accordingly, the workers' compensation judgment is affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 23:1031(E) provides:

An injury by accident should not be considered as having arisen out of the employment and thereby not covered by the provisions of this Chapter if the employer can establish that the injury arose out of a dispute with another person or employee over matters unrelated to the injured employee's employment.
[2] La. R.S. 23:1031 D provides:

D. An injury by accident shall not be considered as having arisen out of the employment and is thereby not covered by the provisions of this Chapter if the injured employee was engaged in horseplay at the time of the injury.
In Baker Hughes, id., the opinion does not show that the employee himself was engaging in the horseplay when his co-workers engaged in horseplay and poked him, causing injury.
[3] La. R.S. 23:1121 provides in pertinent part:

B. The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S. 23:1124(B), when denied his right to an initial physician of choice....
C. If the employer or insurer has not consented to the employee's request to select a treating physician or change physicians when such consent is required by this Section, and it is determined by a court having jurisdiction that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee for reasonable attorney fees related to this dispute and for any medical expense so incurred by him for an aggravation of the employee's condition resulting or withholding of such physician's services. [Emphasis added.]
D. After all examinations have been conducted but prior to any order directing the injured employee to return to work, the employee shall be permitted, at his own expense, to consult with and be examined by a physician of his own choosing. Such report shall be considered in addition to all other medical reports in determining the injured employee's fitness to return to work. Should disagreement exist, after such consultation and examination, as to the fitness of the employee to return to work, the provisions of R.S. 23:1123 shall be followed.
E. Nothing in this Section shall be construed so as to provide that a physician who, regarding the work-related injury, administered emergency treatment only shall be the physician of choice of either the employee or the employer.
[4] La. R.S. 23:1201 F provides in pertinent part:

F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.... [Emphasis added.]
La. R.S. 23:1201 F(2) provides:
(2) This subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.