I,WILLIAM H. BYRNES III, Chief Judge.
STATEMENT OF THE CASE
On January 11, 2000, Horace Johnson, through counsel, filed a disputed claim against his employer, Cox Communications New Orleans, Incorporated (Cox), for compensation arising out of an alleged injury to his neck and back that occurred on August 1, 1997. According to the claim form, Mr. Johnson reported to his supervisor on the same day that he was electrocuted while standing on a ladder and fell to the ground. Mr. Johnson alleged in his claim that his employer did not authorize back therapy and diagnostics recommended by his physician, Dr. George Murphy.
The Office of Workers’ Compensation referred the claim for Mediation Conference to Marcel Lovelace, and required attendance by Mr. Johnson, Cox and Cox’s insurer, Crawford and Company. The mediator reported that Mr. Johnson, his counsel and the Cox representative met, the employer waived service, mediation was held and the issues were framed, but remained unresolved.
laCox answered, admitting that Mr. Johnson sustained an injury on or about the date set forth in his claim; admitting employment status; admitting payment of compensation and wages; admitting that rehabilitation services were offered and refused and that at the time of the alleged injury, National Union Fire Insurance Company provided Cox compensation insurance. Cox denied that Mr. Johnson was temporarily or permanently disabled, or suffered an injury resulting in loss of earning capacity. Furthermore, Cox denied that Mr. Johnson requested or was denied rehabilitation services. Cox alleged as an affirmative defense that Mr. Johnson was intoxicated at the time of the incident and failed to use available safety devices. Cox denied all allegations of arbitrary and capricious conduct and claimed a setoff and reduction of any obligation to pay benefits in the amount of state or federal benefits or payments recovered by Mr. Johnson or, further, a setoff in the amount of, or to reflect, retirement benefits, costs, monies or expenses or any other funds received by Mr. Johnson under any retirement or benefits program to the extent not funded by Mr. Johnson or any workers’ compensation or unemployment compensation statute. In the alternative, Cox claimed a credit and discharge of liability for any and all medical expenses paid by a third party or paid without authorization and pre-approval.
The workers’ compensation judge set and on her own motion continued status conferences for June 9, 2000, June 16, 2000 and August 15, 2000. The judge set the matter for trial on the merits on December 20, 2000.
|3Cox filed a motion for summary judgment on December 12, 2000, alleging that Mr. Johnson’s three physicians of choice agree that his lower back injury was not caused by a work-related accident. The workers’ compensation judge had signed an order setting the motion for hearing on the day of trial, apparently in violation of the rule requiring that such motions be filed no fewer than ten days prior to trial. The parties waived the delay and allowed the trial judge to hear Cox’s motion prior to commencement of trial. The trial judge took the matter under advisement and pro *51 ceeded with the trial on the merits on December 20, 2000.
On March 8, 2001, the workers’ compensation judge rendered judgment in favor of Mr. Johnson, but denied his claim that his employer was arbitrary and capricious in having contested the claim. The trial judge set a telephone status conference for March 27, 2001, at which time the parties were to submit copies of any “new medical reports”. A minute entry in the record shows the trial judge set a motion for new trial for April 16, 2001. The record shows that on April 17, 2001 the court vacated its original judgment of March 8, 2001. The trial judge set a status conference for May 7, 2001. On May 10, 2001 counsel for Cox moved to submit as additional trial evidence the deposition and medical records of Dr. Greg Hoffman and Mr. Johnson’s medical record at Lakeland Medical Center. The trial judge granted the motion on May 10, 2001. Dr. Hoffman’s medical records and the Lakeland records were submitted.
|4On August 22, 2001, the trial court rendered judgment denying Cox’s motion for summary judgment, vacating the judgment of March 8, 2001 as premature, and finding that Mr. Johnson is entitled to Workers’ Compensation medical benefits for past, present and future treatment of his back injury, the only issue before the court. The judge denied Mr. Johnson’s claim for penalties and attorneys’ fees, finding that because of the remoteness in treatment of the back injury, Cox was not arbitrary and capricious in defending against Mr. Johnson’s claim. From this judgment, Cox appeals. Because we find the record below, considered in its entirety, does not afford a reasonable basis for the workers’ compensation’s finding with respect to causation, we find the judgment below to be manifestly erroneous and clearly wrong, and reverse.
STATEMENT OF FACTS
The parties agree that on August 1, 1997, while working as a technician for Cox, Mr. Johnson fell off a ladder and sustained injuries.
According to the employer’s report of occupational injury dated August 5, 1997, Cox reported that Mr. Johnson was cutting a connector when he felt a current and fell six feet off a ladder causing stiffness to his neck and back.
As a result, Cox voluntarily paid Mr. Johnson workers compensation benefits for claimed injuries to his neck and shoulder. Mr. Johnson submitted a copy of the Notice of Payment signed by Crawford and Company and dated August 1, 1997, according to which weekly compensation of $349.00 was to be Rpaid. May 18, 1998 was the stated date disability began and May 22, 1998 was the date the first check was mailed. According to item # 15 of the document, the parts of Mr. Johnson’s body that were injured were his back and neck. The parties agreed that Mr. Johnson is being fully compensated for his neck and shoulder injury; the only issue at trial is whether or not his back complaints are related to his work-related accident.
The parties agreed to the admission of the following exhibits:
D-l: Laboratory Corporation of America post-accident report dated September 12, 2000 showing that Mr. Johnson tested positive for marijuana metabolite and codeine on August 28,1997
D-2: Substance Abuse Management, Inc. post-accident report dated September 5, 1997 showing that Mr. Johnson tested positive for THC and codeine and that Mr. Johnson told the tester that he was taking certain prescription medications including codeine
D-3: Drug Rehabilitation Program Guidelines showing that after Mr. Johnson *52 tested positive for marijuana post-accident, on September 16, 1997 he agreed to conform to Cox’s drug program guidelines
The exhibits relating to Mr. Johnson’s positive drug tests were admitted by agreement of counsel only insofar as they relate to Mr. Johnson’s credibility, and not to establish any affirmative defense.
D-4 Christine Rangel’s functional capacity evaluation of Mr. Johnson dated October 21, 1998 showing that Mr. Johnson demonstrated functional abilities | fiwithin the Medium Physical demand category -with average material handling abilities. She observed good body mechanics during material handling when verbal cue-ing was provided. Task standards for the continuous category were met for all non-material handling activities tested, for example, bending, and stair climbing. Strength limitations were noted with left shoulder flexion and external rotation at 75% of normal limits and left hip extension at 75% of normal limits. All trunk strength, other upper extremity and other lower extremity strength measured within normal limits. Flexibility limitations were noted with cervical flexion, lateral flexion, and rotation to the left; as well as with trunk flexion. All upper extremity, lower extremity, other cervical and other trunk measurements were within normal limits. She found no symptom magnification behaviors or submaximal effort during functional testing.
D-5: Dr. Gregor Hoffman’s medical reports
August 27, 1997, diagnosed joint arthritis and a neck sprain/strain, recommending that Mr. Johnson no longer use a sling or take muscle relaxants and Tylenol # 3 (with codeine) and ordering physical therapy
September 24, 1997, diagnosed cervical neck sprain/strain and sprain of right acromioclavicular (AC) joint with degenerative arthritis and recommending MRI of cervical spine and right shoulder. Dr. Hoffman expected MRIs to reveal mild degenerative disc in lower cervical region normal for a 41-year-old patient and arthritic changes of the AC shoulder joint.
October 15, 1997, following MRIs, diagnosed osteoarthritis of right shoulder joint with shoulder sprain/strain but no evidence of rotator cuff tear or significant impingement, and cervical strain/ neck pain. Dr. Hoffman recommended physical therapy for work conditioning and release to regular work in one month, with light duty until release. Dr. Hoffman disagreed with prescription of Tylenol # 3. Mr. Johnson was to see his other physician, Dr. George Murphy, in the near future.
17Pecember 10, 1997: diagnosed post-cervical strain and neck pain with degenerative joint disease of right shoulder joint. Dr. Hoffman found no need for surgical intervention and recommended that Mr. Johnson undergo a functional capacity evaluation.
January 21, 1998: ordered a work conditioning program and follow-up in six weeks.
September 30, 1998: diagnosed of persistent neck and shoulder pain, referred back to Dr. Murphy, the treating physician. Dr. Hoffman found Mr. Johnson was at maximum medical recovery.
D-6: Dr. George Murphy’s medical records
September 22, 1997: patient information sheet and statement of job-related injury claiming injury to neck as a result of fall from ladder
September 23, 1997: letter to Crawford and Company referring to complaints of neck and right shoulder pain *53 with occasional radiating pain into right arm and hand. Right shoulder shows swelling and tenderness over AC joint and AC separation. According to Dr. Murphy, Mr. Johnson could discontinue use of a sling and should avoid lifting with his right arm; Mr. Johnson needed an MRI, after which he would return to Dr. Murphy with the scan results.
October 21, 1997: letter to Crawford and Company reporting on MRI showing moderate changes in AC shoulder joint with some tendonitis in rotator cuff, but no significant tearing; cervical spine scan shows changes indicative of probable trauma to posterior aspect of lower cervical spine with some bulging in disc but no significant herniation or nerve impingement. Dr. Murphy recommended that Mr. Johnson continue on light duty and continue physical therapy.
December 23, 1997: Mr. Johnson claims moderate discomfort in neck but no major radicular symptoms; scheduled for functional capacity evaluation; taken off Motrin and prescribed Napro-syn.
February 3, 1998: continued neck pain, but no radicular symptoms; scheduled for therapy and reconditioning program in March.
March 16, 1998: moderate neck symptoms, did not start rehabilitation program; prescribed occasional Vicodin and continued Naprosyn.
April 20, 1998: moderate neck symptoms; referred to EMG testing of left upper extremity.
May 21, 1998: nerve test results were normal; advised Mr. Johnson to start regular exercise program and continue to avoid heavy work with left arm
Is July 9, 1998: advised Mr. Johnson to exercise three times a week.
September 10,1998: no major change, Mr. Johnson tries to do some exercise and has lost a little bit of weight, but has pain in neck and shoulder when he does too much; continue with occasional medication.
November 2, 1998: decreased activity, more stable, only occasional pain medication.
January 7, 1999: stable; Mr. Johnson unable to work overhead; comfortable with occasional pain medication.
March 4, 1999: lately has been having some low back and left leg symptoms that would probably come from the lower back unrelated to the neck; continued with occasional medication. [This was the first mention of a back problem, nearly two years after the accident.]
May 6, 1999: no major changes, with continued symptoms in neck and shoulder.
July 19, 1999: continued back and shoulder symptoms; more recently, lower back and left leg trouble; doctor prescribed Naprosyn and continued Vico-din.
August 26, 1999: Mr. Johnson is to have an MRI of the lumbar spine.
October 14, 1999: Mr. Johnson “finally” had MRI done, showing degeneration and left-sided herniation at L5-S1 level; tight left leg raise; Mr. Johnson to try to avoid bending and lifting; may take occasional Vicodin. [This MRI is the first objective indication of a back problem.]
November 18,1999: no change
December 16, 1999: back and left leg continue to give him trouble; straight leg raise positive on left; may need to see a psychiatrist again.
January 31, 2000: no change
February 10, 2000: no change
March 23, 2000: no change
*54 [ 9D-7: Medical records of Dr. James R. Davis
July 14, 1997: referred to psychiatrist for depression and job stress because of cutbacks at work and increased production quotas; prescribed Trazodone.
August 4, 1997: Mr. Johnson reported fall, neck and low back stiffness.
August 6, 1997: prescribed arm sling and heat, Tylenol # 3 and Motrin
August 6, 1997: X-Ray report showing normal skull and cervical spine; no evidence of fracture, dislocation or cal-difíc bursitis in shoulder, but notes mild arthritic change in the acromioclavicular (AC) shoulder joint.
August 15, 1997: letter to Crawford and Company, advising Mr. Johnson could return to limited duty on August 18,1997.
August 21, 1997: letter to Crawford and Company advising Mr. Johnson could return to light duty, restricted from climbing and carrying over twenty pounds; Mr. Johnson should not reach above his head or engage in activity calling for repetitious movement of his right arm.
September 9,1997: letter to Crawford and Company indicating Mr. Johnson was medically cleared for door to door sales work so long as he did not carry anything heavy.
October 5, 1997 report from Crescent City MRI: subtle evidence of post-traumatic change at posterior spinous processes at C5, C6 and C7 levels; subtle marrow space edema on left facet structures C4 and C5; under 2 mm posterior bulging annulus fibrosis prominence at C4, C5 and C6 levels with superimposed anterior prominence of anterior fibrosis at these leyels as well; normal cervical spinal cord and posterior fossa central nervous system structures.
October 1, 1997 report from Crescent City MRI concerning MRI of right shoulder: evidence of bursitis tendinitis of rotator cuff, but no partial or complete tear; mild hypertrophic change of AC joint with partial impingement on subacromial space and with grade I configuration of the Acromion in the Sagit-tal projection.
Copy of Dr. Hoffman’s letter of September 30, 1998 to Crawford and Company.
The parties stipulated to the admission of the medical depositions previously taken of Dr. George Murphy and Dr. James Davis.
liftAccording to Dr. Murphy, “Based on my records and what I — and the time that I treated him, I could not say that the lower back is related to the injury.... Now, apparently he says he had a lot of low back problems right after the accident. I don’t have those — those records or anything. Whether or not it’s a little bit related, we’d probably have to go back to those records. But based on my records and my time seeing him, I would not be able to relate the lower back to the — to that work-related injury.” The Hoffman records, as discussed previously herein, do not mention a back problem.
Dr. Davis testified in his deposition that there was no mention in his notes or in Dr. Hoffman’s notes (the notes of the doctor who ordered Mr. Johnson’s MRI) that Mr. Johnson was complaining of anything other than neck stiffness, which had improved from the time that he had fallen at work. Furthermore, there was no mention of any pain or injury to Mr. Johnson’s lower back. Dr. Davis was asked whether there was any indication that Mr. Johnson injured his lower back in the fall in question, to which Dr. Davis replied with an unequivocal, “None whatsoever.”
The parties stipulated to the admission of Mr. Johnson’s medical records showing his physical therapy treatments at Lake-land Medical Center. He received therapy *55 for cervical disc and shoulder strain. Our examination of the Lakeland records revealed no indication of back complaints or treatments through the final entry, March 30,1998.
In Jeanette Johnson, Mr. Johnson’s wife of thirty years, testified that Mr. Johnson had no lower back problems prior to the accident. Immediately following the accident, he complained to her of pain in his shoulder, neck and back. Mr. Johnson told her that after completion of the treatment for his neck and shoulder problems the doctor would begin treating his back problem, but she had no first hand knowledge of any conversations between her husband and his physicians.
Mr. Johnson testified that the morning after the accident he went to work, but at the end of the day when he tried to get up to make a connection he became dizzy and went home to bed. The next morning, he could not get out of bed and had no feeling in his back, neck and legs. He saw his physician, Dr. James Davis, and told him his neck, shoulder, back and left leg were hurting. Dr. Davis recommended time off and heat treatments. Mr. Johnson was later referred to Dr. Gregor Hoffman, a specialist, to whom he complained of neck, back and shoulder pain. Mr. Johnson was dissatisfied when Dr. Hoffman recommended that he discontinue taking the muscle relaxer and Tylenol #3 that Dr. Davis had prescribed, so Mr. Johnson went to see another specialist, Dr. George Murphy. He told Dr. Murphy of his neck, shoulder and back pain, whereupon Dr. Murphy asked which was worst and was told the neck pain was bothering Mr. Johnson the most. According to Mr. Johnson, Dr. Murphy said he would see about getting him treatment for the neck pain. Mr. Johnson assumed the physical therapy was for his lower back as well as his neck until the therapist told him he was treating only the |19neck area. This contradicts Mrs. Johnson’s testimony that Mr. Johnson told her the back would be treated after the neck and shoulder problems had been resolved.
On cross-examination, Mr. Johnson testified that he had four children with his wife and “one outside.” When questioned by counsel for Cox what was meant by the term “one outside”, Mr. Johnson’s counsel objected to relevance. Defense counsel argued the question was relevant to Mr. Johnson’s credibility and character, since his testimony was contrary to that given by the three treating physicians. The trial judge replied, “Oh, and they’re all moral. Didn’t we attest their morality as well?” and sustained the objection. The trial judge also sustained objections to defense counsel’s attempts to impeach Mr. Johnson’s testimony in a related Social Security action concerning the limitations Dr. Murphy placed on his return to work. Counsel also pointed out some inconsistencies between Mr. Johnson’s deposition testimony and trial testimony concerning his marijuana use.
When defense counsel pointed out that Mr. Johnson signed a statement when he first saw Dr. Murphy in which he said the injury was to his neck, Mr. Johnson replied, “I’m not a physician, so I was under the impression that if my neck was bothering me, than [sic] that’s part of the lower back. That’s part of the back as well. I’m not a physician, so I don’t know.” ASSIGNMENT OF ERROR: The Workers’ Compensation trial court erred in having failed to accord proper weight to the medical opinions and observations of the claimant’s own treating physician and two other Isphysicians, whose records, reports and testimony shows that claimant’s alleged back pain is not related to the alleged injury he suffered on August 1,1997.
The standard of review for findings of fact by a hearing officer in a work *56 er’s compensation case is “manifest error,” and it is the appellate court’s duty to determine not whether the fact finder’s conclusion was right or wrong, but whether it was reasonable. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Jackson v. Quikrete Products, Inc., 2001-1181 (La.App. 4 Cir. 4/17/02), 816 So.2d 338. Where there are two permissible views of the evidence, a fact finder’s choice between them can never be manifestly erroneous. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97); 704 So.2d 1161, 1164. The operative words in these two holdings are “reasonable” and “permissible.”
As a reviewing court, it is our duty to determine whether the workers’ compensation court’s evaluations and inferences were reasonable, and whether her decision to accept Mr. Johnson’s testimony was permissible.
Mr. Johnson’s testimony alone may be sufficient to discharge the burden of proving that he sustained a work-related injury, provided that two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon his version of the incident, and (2) his testimony is corroborated by the circumstances following the incident. Jackson v. Quikrete, at pp. 2-3, 816 So.2d at 341. In this case, there is no question as to whether Mr. Johnson suffered an injury when he fell from the | gladder or as to whether the accident was job-related. The sole issue framed by the parties is whether the BACK injury complained of was caused by the fall from the ladder. There is no question as to whether Mr. Johnson’s neck and shoulder injuries were caused by the fall, and Cox promptly and consistently fulfilled its compensation obligation to Mr. Johnson in regard to those injuries.
The causal link between the employee’s illness and work-related duties must be established by a reasonable probability. Once the employee has established the existence of an occupational disease, for his illness to be compensable, the employee must establish that the illness is disabling, that is that he meets the criteria for one or more of the statutory disabilities. La.R.S. 23:1031.1(A) and (B); La.R.S. 23:1221; Seal v. Gaylord Container Corp., 97-0688 at p. 6, 704 So.2d at 1165.
Mr. Johnson bears the initial burden of proof as to causation, and must prove by a preponderance of the evidence that the fall from the ladder had a causal relationship to his back problem; if the testimony leaves the probabilities evenly balanced, he has failed to carry his burden. Once he has carried that initial burden, the burden of proof shifts to Cox, who must produce evidence that it is more probable than not that the back injury was not caused by the fall from the ladder. See Jackson v. Quikrete, Inc., at p. 3, 816 So.2d at 342.
It is reasonable to apply the two-pronged test pronounced in Jackson to determine whether the trial court’s finding that Mr. Johnson’s back injury was caused by his fall from the ladder was reasonable and whether the trial judge’s |T ¿view of the evidence was permissible. Applying that test, we are led to the irresistible conclusion that Mr. Johnson did not carry his burden of proof. The evidence of all three physicians, both testimonial and documentary, and the Lakeland records fail to corroborate Mr. Johnson’s testimony that he complained of back problems early on in his treatment but was told by the physicians that they would treat the neck first and only after that treatment was completed would they focus on the back problem. Indeed, Mr. Johnson produced no evidence that this serial medical treatment is nor *57 mal or acceptable practice in cases such as his.
In reaching our decision, we are mindful of two guiding jurisprudential principles. The first is our constitutional duty to review both law and fact. Although we accord deference to the fact finder, we are cognizant of our duty pursuant to La. Const. Art. V, § 10(B) to review facts, not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court’s verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221; Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745.
The manifest error test dictates that a reviewing court must do more than simply review the record for some evidence that supports or controverts the trial court’s finding — we must review the record in its entirety to determine whether the fact finder’s conclusion in this case was reasonable. Cole v. Department of Public Safety, 2001-2123, p. 14 (La.9/4/2002), 825 So.2d 1134, 1144.
116Where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Cole v. Department of Public Safely, p. 14, 825 So.2d at 1144, citing Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
The evidence presented in support of Mr. Johnson’s claim is inconsistent. As noted herein, Mrs. Johnson’s testimony conflicts with Mr. Johnson’s, and Mr. Johnson’s testimony concerning his marijuana use varies between deposition and trial. However, these inconsistencies have a minor effect on our determination when compared to Mr. Johnson’s total failure to satisfy the burden of proof requirements set forth in Cole.
In Cole, the supreme court held that after an extensive review of the medical evidence they found insufficient evidence to support the findings of the district and appellate courts that Mr. Cole suffered a severe closed head trauma as a result of a battery to his head. In that case, the court concluded that although several doctors diagnosed Cole with a traumatic brain injury, there was no objective medical evidence to support the finding that he suffered a serious head trauma. The testimony of treating physicians that Cole suffered a head injury was based solely on the history relayed to them by Cole, without objective confirmation of such an injury. The supreme court noted that if an expert opinion is based upon facts not supported by the record, the opinion might be rejected. The court referred also to 117the fact that Cole did not initially complain of a headache until March 13, 1996, six months after the alleged incident giving rise to his claim.
Under the Cole rationale,, we have no choice but to reverse the trial court’s finding as to causation. Unlike Mr. Cole, whose medical evidence was deemed insufficient, Mr. Johnson produced no medical opinion to support his claim of causation. Neither Dr. Davis nor Dr. Murphy, Mr. Johnson’s physicians of choice who treated him for his injuries, related his back problems to the fall from Cox’s ladder. Dr. Hoffman’s medical records likewise do not support Mr. Johnson’s claim of back injury. Furthermore, the delay between the incident and Mr. Johnson’s reporting back *58 pain was over a year, more than twice the delay found by the supreme court in Cole to have made the lower courts’ finding of causation to have been unreasonable.
To the same effect is the Second Circuit Court of Appeal’s holding in Williams v. Jones Truck Lines, Inc., 27,465 (La.App. 2 Cir. 11/1/95), 662 So.2d 867. Mr. Williams testified that he was injured, reported his accident and was taken to a doctor the following day, complaining of knee pain. He testified that a week later he complained to the treating physician of back pain, Mr. Williams also testified that he had no health problems prior to the work-related injury. He stopped working two months later because of back pain. The treating physician testified on deposition that he did not recall that Mr. Williams mentioned back pain, and neither his nor his nurse’s notes reflected such a complaint. He saw Mr. Williams just over two months after the injury, when the major complaint was | isback pain, but the doctor did not relate the back injury to the accident that occurred two months previous to the examination. The sole medical opinion stated merely that Mr. Williams’ back pain could possibly have resulted from the accident The court reversed the workers’ compensation judgment, holding that the medical evidence failed to show that it was more probable than not that the back injury was caused by the work-related accident.
The facts of the instant case are even stronger than those in the Williams case, since Mr. Johnson produced no medical opinion at all indicating even a possible causal relationship between the accident and his back problem.
This assignment of error has merit.
CONCLUSION
For the foregoing reasons, we reverse the judgment of the workers’ compensation court and render judgment in favor of defendant, Cox Communications New Orleans, Incorporated, dismissing the claim of Harold Johnson. Costs of this appeal are assessed against Harold Johnson.
REVERSED AND RENDERED.