ROSEMARY LEDET, Judge.
h This appeal arises out of a Petition for Protection from Abuse (the “Petition”).[1] Bobby Autin, II, filed the Petition against his former girlfriend, Nadeza Voronkova. Following a hearing at which Ms. Voronko-va was absent, the trial court granted Mr. Autin’s request for a final order of protection. In response, Ms. Voronkova filed a motion for new trial, which the trial court denied. From that ruling, Ms. Voronkova appeals. The narrow issue presented is whether Ms. Voronkova’s due process rights were violated by the trial court’s holding the hearing in her absence. Finding no violation, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On January 9, 2015, Mr. Autin filed the Petition alleging, among other things, that on December 30, 2014, Ms. Voronkova committed a battery on him. He requested an order of protection prohibiting her from coming to his residence or work, coming within one hundred yards of him, or contacting him in any manner. On that same date, a temporary order of protection (“TRO”) was issued; and a contradictory hearing was set for January 30, 2015, at 9:00 a.m., in Civil District | ¡.Court in New Orleans, Louisiana (“CDC”). On January 10, 2015, Ms. Voronkova was personally served at her residence in Los Angeles, California, with a copy of the Petition and the TRO; she was served pursuant to the Louisiana Long Arm Statute, La. R.S. 13:3204 (the “LAS”).
On January 30, 2015, the hearing was held on the Petition in CDC.[2] Mr. Autin and his counsel were present; neither Ms. Voronkova nor anyone representing her was present. After Mr. Autin provided proof that Ms. Voronkova was served on January 10, 2015, pursuant to the LAS, the trial court decided to proceed in absentia and requested that Mr. Autin present his evidence. Mr. Autin testified regarding *1069 the battery Ms. Voronkova committed on him on December 30, 2014. He further testified and presented proof regarding her violations of the TRO on the day before the hearing.
As to the TRO violations, Mr. Autin presented proof that on January 29, 2015, Ms. Voronkova sent him numerous text messages, commencing at 12:26 a.m. through 2:36 a.m. Her text messages included a text acknowledging that she knew she was violating the TRO — “Pis [please] ... Don’t report this message ... Legally I can not [sic] ... contact you.... I’ll go to jail.” He also presented proof that Ms. Voronkova called his cell phone numerous times during that same time frame. Finally, he presented proof that she entered his apartment without permission early that morning. Particularly, he presented a photograph taken with his cellphone at 5:41 a.m. of Ms. Voronkova in his apartment. According to Mr. Autin, the photograph depicted Ms. Voronkova standing in his bedroom hovering | aover him. Later that day, Mr. Autin reported Ms. Voronko-va’s violations of the TRO to the New Orleans Police Department (“NOPD”). As noted elsewhere, Ms. Voronkova was arrested that day by the NOPD for violating the TRO; it is undisputed that at the time of the hearing she was incarcerated.
Based on the evidence presented at the hearing, the trial court found that, pursuant to La. R.S. 46:2135, Mr. Autin had proven by a preponderance of the evidence the allegations of abuse contained in the Petition. The trial court thus issued a final order of protection, valid for eighteen months (through July 30, 2016) against Ms. Voronkova.[3] On February 6, 2015, Ms. Voronkova filed a motion for new trial, which the trial court summarily denied. This appeal followed.
DISCUSSION
On appeal, Ms. Voronkova asserts the following two assignments of error:
1. The Trial Court erred in not granting her a new trial.
2. The Trial Court erred in proceeding against her in absentia.
Although the issues raised by her assignments of error are interrelated, we separately address each issue.

1. Denial of motion for new trial

Under the Code of Civil Procedure, the grounds on which a motion for new trial may be granted are divided into two categories — peremptory and discretionary. The peremptory grounds are set forth in La. C.C.P. art.1972, which provides that the granting of a new trial is mandatory in the following three instances: (1) when the verdict or judgment appears clearly contrary to the law and evidence; (2) when the party has discovered, since the trial, evidence important to |4the cause, which he could not, with due diligence, have obtained before or during the trial;[4] and (3) when the jury was bribed or has behaved improperly so that impartial justice has not been done. The discre *1070 tionary grounds are set forth in La. C.C.P. art.1973, which provides that the trial court has discretionary authority to grant a new trial “in any case if there is good ground therefore, except as otherwise provided by law.”
The applicable standard of review in ruling on a motion for new trial is whether the trial court abused its discretion.[5] The abuse ,of discretion standard applies regardless which ground — peremptory or discretionary — the new trial motion is based upon.[6] “The abuse of discretion standard is highly deferential, but a court necessarily abuses its discretion if its ruling is based on an erroneous view of the law.”[7]
Although La. C.C.P. art.1976 refers to a hearing on a motion for new trial, the jurisprudence has recognized a well-settled exception under which a trial court may summarily deny a motion for new trial. The jurisprudential exception applies | .¡“in the absence of a clear showing in the motion of facts or law reasonably calculated to change the outcome or reasonably believed to have denied the applicant a fair trial.”[8] As a general rule, the trial court may summarily deny a motion for new trial if the motion simply reiterates issues thoroughly considered at trial.[9] In this case, the trial court summarily denied Ms. Voronkova’s motion for new trial. In so doing, it found that she “failed to raise any new issues for consideration” and that she “has not been denied a fair trial.”
On appeal, Ms. Voronkova asserts, as she did in the trial court, that she is entitled to a new trial for on the following three grounds: (i) newly discovered evidence, (ii) the judgment will result in a miscarriage of justice, and (iii) the interest of fairness. As to the first ground, Ms. Voronkova fails to articulate what the newly discovered evidence entails. As to all the grounds, her argument is the same. She contends that her inability to appear at the hearing was due to Mr. Autin alleging a violation of the TRO on the eve of the hearing and having her arrested for the alleged violation. Because of her arrest and incarceration and because of Mr. Autin and his counsel’s failure to inform the trial court of these facts, she contends that she was deprived of her due process rights to be heard and to defend the allegations of the Petition. To hold otherwise, she contends, would open a “Pandora’s Box” and allow a plaintiff to merely allege a violation of a TRO and then proceed against the defendant in absentia. In support of her argument, Ms. Voronkova submits the following time line:
*1071 Is* On January 29, 2015, at 3:40 p.m., Mr. Autin contacted the NOPD, alleging that Ms. Voronkova had violated the TRO.
• On that same date, at 5:00 p.m., Ms. Voronkova was arrested and booked for violation of La. R.S. 14:79, Violation of Protective Order.
• On January 30, 2015, at 9:00 a.m., while Ms. Voronkova was in custody of the Orleans Parish Sheriff, a judgment was rendered against her by the trial court in CDC.
• On that same date at 3:00 p.m., Ms. Voronkova was arraigned in New Orleans Municipal Court, wherein she pled not guilty to all charges and was subsequently released from custody.
Mr. Autin counters that there is no proof that either he or his attorney knew of Ms. Voronkova’s arrest and incarceration at the time of the hearing. To the contrary, his attorney informed the trial court at the hearing of his lack of-knowledge whether she had been arrested. The record supports Mr. Autin’s contention. At the close of the hearing, the trial court inquired of Mr. Autin’s counsel whether there was a warrant out for Ms. Voronko-va’s arrest; and the following colloquy ensued:
17JUDGE ERVIN-KNOTT:
You mentioned that she had a warrant out for her arrest.
MR. HOFFMAN [Mr. Autin’s counsel]:
That’s my understanding from the officer we talked to yesterday.
JUDGE ERVIN-KNOTT:
Do you know if she’s been picked up? Do you know if she’s incarcerated now? MR. HOFFMAN [Mr. Autin’s counsel]:
Your Honor, I tried to check docket master on the Orleans Parish criminal sheriffs website. I couldn’t find her name when I put it in — I ran different variations of it, as well — and so I am not - sure that she was. That’s all I have. JUDGE ERVIN-KNOTT:
Okay.
MR. HOFFMAN [Mr. Autin’s counsel]:
I was told by the officer that he was going to ask for the magistrate to issue a warrant, criminal trespassing, violating a protective order.
The record thus does not support Ms. Vo-ronkova’s assertion that Mr. Autin or his counsel was aware of her arrest and incarceration at the time of the hearing.
Mr. Autin further counters that there was no newly discovered evidence. He points out that Ms. Voronkova could have testified at the hearing but for her violating the TRO. Moreover, he contends that Ms. Voronkova’s motion for new trial corroborated the evidence he introduced at the hearing. The evidence, he contends, establishes that Ms. Voronkova knowingly and intentionally violated the TRO, resulting in her arrest, incarceration, and self-imposed absence from the hearing.
Mr. Autin still further counters that there was no due process violation given Ms. Voronkova admittedly was served, given proper notice of the hearing, and afforded an opportunity to be heard. The only reason she was unable to attend the hearing was her violation of the TRO. Mr. Autin notes that Ms. Voronkova’s attempts to blame him or the trial court for her absence should be rejected. Mr. Autin distinguishes the circumstances in this case from those in which a prisoner is denied his day in criminal court to defend himself because the sheriff refuses to bring him to court. Finally, he contends that Ms. Voronkova’s argument regarding opening a Pandora’s Box is illogical “because there would need to be sufficient evidence of a violation in order for the police to take action against a defendant.”
*1072 | ^Rejecting Ms. Voronkova’s argument, the trial court found that Ms. Voronkova “failed to state facts or law that would lead to a change of outcome.” In so finding, the trial court reasoned, in its per curiam, as follows:
At the hearing, the Court was aware that Defendant’s incarceration may have prevented her from appearing before the Court. However, the fact that Defendant’s incarceration resulted from Defendant’s violation of the temporary restraining order against her is unmoving. Contrary to Defendant’s position, the exhibits attached to Defendant’s Motion serve to corroborate Petitioner’s testimony. The incident report and gist sheet (exhibits) demonstrate that Defendant violated the temporary restraining order against her when she entered Petitioner’s residence in the middle of the night. Thus, not only does Defendant’s Motion fail to clearly show facts and law that could lead to a change of outcome, Defendant’s Motion actually provides facts that corroborate Petitioner’s case. Accordingly, the Court finds that Petitioner carried his burden by providing by a preponderance of the evidence the allegations of abuse contained in his Petition.
Concluding, the trial court found that “[Ms. Voronkova’s] appearance would not have changed the outcome of the hearing.” Unless Ms. Voronkova’s contention that her due process rights were violated has merit, we find no abuse of discretion in the trial court’s decision denying her motion for new trial.
Ms. Voronkova acknowledges — and the record reflects — that she was served with the Petition and that she had notice of the hearing. She, however, contends that her due process rights were violated because she was deprived of the opportunity to be heard and to defend the allegations of the Petition. If, as Ms. Voronkova contends, the trial court’s proceeding in her absence violated her due process rights, the trial court’s denial of her motion for new trial would constitute an abuse of discretion.[10] Thus, the narrow issue presented is whether her due process rights were violated by the trial court proceeding in absentia.
|⅞¾. Proceeding in absentia
Although Ms. Voronkova contends that her lack of presence at the hearing violated her due process rights, she cites no authority, nor is there any authority requiring that the trial court, on its own motion, continue the hearing or arrange for an inmate’s transportation and appearance at a hearing in a civil matter.[11] To *1073 the contrary, the jurisprudence has placed the onus on incarcerated individuals to take steps to secure their presence in court, holding as follows:
A prisoner has a right of access to state and federal civil courts. La. Const, art. 1, § 22; Pollard v. White, 738 F.2d 1124 (11th Cir.1984), cert. denied, 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985); Taylor v. Broom, 526 So.2d 1367 (La.App. 1st Cir.1988). However, this right does not necessarily include the right to be physically present at the trial of a civil suit. Pollard, 738 F.2d at 1125; Jones v. Phelps, 374 So.2d 144 (La.App. 1st Cir.1979); Taylor v. 10Broom, supra. Generally, prisoners who bring civil actions have no right to be personally present in court at any stage of the action. Holt v. Pitts, 619 F.2d 558 (6th Cir.1980). Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, among which is the right of a prisoner to plead and manage his action in court personally. Price v. Johnston, 334 U.S. 266, 285-86, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948), overruled on other grounds by McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).
It is not unusual for individuals who are incarcerated to be parties to civil litigation, either as plaintiff or defendant, and a writ of habeas corpus ad testificandum is the means for such individuals to be present in court. Prisoners who are parties to litigation utilize this mechanism to obtain their presence in court. Ardoin v. Bourgeois, 2004-1663 (La.App. 3d Cir.11/2/05), 916 So.2d 329; Falcon v. Falcon, 07-491 (La.App. 5th Cir.12/27/07), 975 So.2d 40, writ denied, 2008-0295 (La.3/28/08), 978 So.2d 311.[12]
Based on the jurisprudence, we find it was incumbent on Ms. Voronkova either to seek to continue the hearing or, if she wanted to attend the hearing, to seek the proper relief to ensure her appearance — to file a motion to arrange for her transportation to court.[13] The record does not show that she made any attempts to do either. In light of her failure to do either coupled with her knowledge of the hearing date, we conclude that the trial court did not abuse its discretion by proceeding in ab-sentia. We further conclude, given there was no due process violation, that the trial court did not abuse its discretion by denying Ms. Voronkova’s motion for new trial.

DECREE

For the forgoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. The Petition was filed pursuant to La. R.S. 46:2131 etseq. or La. R.S. 46:2151.

. On the same date, Mr. Autin filed a Rule to Show Cause why Mr. Voronkova should not be held in contempt for violating the TRO. The hearing on the Rule to Show Cause was set for April 22, 2015. This appeal does not involve the contempt motion.

. See La. R.S. 46:2136 F(l) (providing generally that “any final protective order ... shall be for a fixed period of time, not to exceed eighteen months”).

. "Newly discovered evidence justifies a new trial only if evidence: (1) is discovered after trial; (2) could not, with due diligence, have been discovered before or during the trial; and (3) is not merely cumulative, but instead would tend to change the result of the case.” ’ Washington v. Landry’s Seafood House New Orleans, Inc., 14-0128, 14-0530, p. 8 (La.App. 4 Cir. 11/19/14), 154 So.3d 677, 682-83 (quoting Jouve v. State Farm Fire and Cos. Co., 10-1522, pp. 15-16 (La.App. 4 Cir. 8/17/11), 74 So.3d 220, 229, and citing Turner v. Dameron-Pierson Co., Ltd., 95-0143, p. 2 (La.App. 4 Cir. 11/16/95), 664 So.2d 739, 740).

. Bilbe v. Foster, 15-0302, p. 5 (La.App. 4 Cir. 9/9/15), 176 So.3d 542, 547, (citing Martin v. Heritage Manor S. Nursing Home, 00-1023, p. 6 (La.4/3/01), 784 So.2d 627, 632) (citing Joseph v. Broussard Rice Mill, Inc., 00-0628, p. 15 (La.10/30/00), 772 So.2d 94, 104).

. GE Commercial Finance Business Property Corp. v. Louisiana Hosp. Center., L.L.C., 10-1838, p. 6 (La.App. 1 Cir. 6/10/11), 69 So.3d 649, 654 (citing Rao v. Rao, 05-0059, p. 7 (La.App. 1 Cir. 11/4/05), 927 So.2d 356, 361); Jones v. LSU/EA Conway Medical Center, 45, 410, p. 6 (La.App. 2 Cir. 8/11/10), 46 So.3d 205, 210 (citing Drapcho v. Drapcho, 05-0003 (La.App. 1 Cir. 2/10/06), 928 So.2d 559, and Rao, supra).

. LCR-M Limited Partnership v. Jim Hotard Properties, L.L.C., 13-0483, p. 9 (La.App. 4 Cir. 10/9/13), 126 So.3d 668, 675.

. Lopez v. Wal-Mart Stores, Inc., 94-2059, p. 9 (La.App. 4 Cir. 8/13/97), 700 So.2d 215, 220 (citing Sonnier v. Liberty Mutual Ins. Co., 258 La. 813, 248 So.2d 299 (1971), and Allen v. Noble Drilling (U.S.) Inc., 93-2383, p. 6 (La.App. 4 Cir. 05/26/94), 637 So.2d 1298, 1302).

. Succession of Morvant, 578 So.2d 549, 554 (La.App. 3rd Cir.1991) (citing Caffery v. Powell, 320 So.2d 223 (La.App. 3rd Cir.1975)).

. See LCR-M Ltd. P’ship, 13-0483 at p. 9, 126 So.3d at 674 (holding that “[b]ecause their due process rights were violated, the trial court should have granted the defendants' motion for new trial.”).

. When an inmate is a party to civil judicial proceedings, the trial judge, in his discretion, may order the presence of the inmate in court pursuant to LSA-C.C.P. art. 197, which provides as follows:
A. As used in this Article, "inmate” means a person confined in any prison, jail, correctional or training institution operated by the state, any of its political subdivisions, or any sheriff either while awaiting disposition of contemplated or pending criminal charges, pursuant to a sentence imposed by a court following the conviction of a crime, or pursuant to the judgment of a juvenile court.
B. When in any judicial proceeding the testimony of an inmate is required by law to be given in open court, when an inmate is a party to a judicial proceeding under circumstances giving him the legal right to be present in open court at any stage of the proceeding, or when the presence of an inmate witness in open court is requested timely by a party to litigation and is justified under the facts and circumstances of the case, the trial judge, in his discretion, may order any of the following:
*1073 (1) The court be convened and the testimony of the inmate be taken or the proceedings conducted at the institution wherein the inmate is confined.
(2) The testimony of the inmate be taken, or the proceedings conducted, by teleconference, video link, or other available remote technology approved by the judge, or by telephone if agreed to by all parties and approved by the judge.
(3) If the interests of justice require the presence of the inmate in open court and if no other methodology authorized hereunder is feasible, the court may order that the prisoner be transported to the courthouse pursuant to R.S. 15:706(D).

. Leeper v. Leeper, 44,777, pp. 6-7 (La.App. 2 Cir. 9/23/09), 21 So.3d 1006, 1010.

. See Brooks v. Allride Auto, LLC, 09-252, p. 3 (La.App. 3 Cir. 6/3/09), 11 So.3d 1222, 1224; see also Boyd v. Picayune, 11-119, pp. 4-5 (La.App. 5 Cir. 11/15/11), 82 So.3d 298, 300.