JOY COSSICH LOBRANO, Judge.
|Jn this workers’ compensation case, plaintifiyappellant, Claudette Sislo (“Claimant” or “Sislo”) appeals the September 21, 2015 judgment of the Office of Workers’ Compensation (“OWC”), which granted summary judgment in favor of the defendant/appellee, New Orleans Center for the Creative Arts (“Employer” or “NOCCA”), dismissing Sislo’s disputed claim for compensation, Form LDOL-WC-1008 (the “disputed claim” or “1008”).
This litigation arises from Sislo’s exposure to airborne construction debris wafting into the NOCCA parking lot from sandblasting and waterproofing work being performed at a neighboring building, the Rice Mill Lofts (“Rice Mill”). The construction at issue began in July 2013 while school was not in session, but while Sislo, a NOCCA school administrator, reported for work year round. Sislo was hospitalized after the • construction began for an exacerbation of a preexisting lung condition.
During the construction,. Sislo complained of visible dust on her vehicle, at all times at which Sislo witnessed dust or debris on her vehicle, she had “clocked 12out” .at work and was approaching her vehicle to leave the premises for the day. The parking lot where Sislo usually parked her vehicle was owned by NOCCA and was located on the NOCCA premises. There was a parking policy in place, which NOCCA required Sislo to follow, if she chose to park her car in the NOCCA parking lot. However, Sislo was not required to park in the NOCCA parking lot, and could have opted to take public transportation or park on the street. During the week leading up to her hospitalization, Sis-lo requested and received permission to park in a separate NOCCA parking lot closer to her office and further from the Rice Mill. Sislo worked at NOCCA on the Tuesday through the Friday of that week and was hospitalized the following Monday.
On July 24, 2014, Sislo filed a 1008 alleging that on July 29,2013, as a result of this exposure, she became unable to breathe and was hospitalized with advanced interstitial lung disease, exacerbating her . preexisting .asthma.[1] She claimed that no *1205 wage benefits had been paid or medical treatment authorized. Subsequently, Sislo underwent a double lung transplant in November 2014.
On May 5, 2015, Sislo filed an amended 1008 alleging entitlement to penalties and attorney’s fees for NOCCA’s failure to pay workers’ compensation benefits.
On August 14, 2015, NOCCA filed a motion for summary judgment, contending that, as a matter of law, Sislo’s alleged accident and injury are not ^compensable under the Louisiana Workers’ Compensation Act. NOCCA argued that the accident and injury were neither “arising out of’ nor “in the course of’ Sislo’s employment because (1) all of her exposures to airborne particles occurred in the parking lot before her work duties began or after her work duties ended; and (2) the risk from which her injury resulted was no greater for Sislo as a NOCCA employee than it was for a non-employee or other member of the public.[2]
On the same day, Sislo filed a motion for summary judgment, arguing that she is entitled to indemnity and medical benefits, penalties, and attorney’s fees from July 23, 2018 forward. She contended that multiple physicians opined that her lung condition is related to her exposure to dust and particulate matter at work and that NOC-CA has failed to reasonably controvert her entitlement to workers’ compensation benefits. Sislo argued that her exposure took place both in the parking lot controlled by NOCCA and within the NOCCA building where her office was located.
A hearing on both motions for summary judgment went forward on September-17, 2015. Following the hearing, the OWC rendered judgment on September 21, 2015 denying Sislo’s motion for summary judgment and granting NOCCA’s motion for summary judgment.
Sislo timely filed the instant appeal, arguing that the OWC erred as follows:
(1) by finding that Sislo was not injured in the course and scope of her employment’when exposed to airborne particulate matter in the NOCCA parking lot;
14(2) by failing to apply the threshold doctrine;
(3) by failing to find a disputed issue of material fact regarding whether Sis-, lo was exposed to airborne particulate matter in areas other than the NOCCA parking lot; '
(4) by not ruling that NOCCA was arbitrary and capricious for failing to pay benefits to Sislo; and
(5) by failing to award benefits and penalties to Sislo.
On appeal, Sislo seeks review of both the grant of summary judgment in favor of NOCCA and the denial of the motion for summary judgment filed by Sislo.
■ “A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate; i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.” Samaha v. Rau, 2007-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83.
A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories-, and admissions on file, together with the affidavits, if any, show that, there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2014).[3] “The summary judg *1206 ment procedure is designed to secure the just, speedy, and inexpensive determination of every action ... The procedure is favored and shall be construed to accomplish these ends.” La. C.C.P. art. 966(A) (2) (2014 j.
|sAs to the burden of proof on a motion for summary Judgment, La. C.C.P. art. 966(C)(2)(2014) provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out the court that1 there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish ■ that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
The Louisiana Supreme Court explained the summary judgment procedure as follows:
[The summary judgment procedure] first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial.... Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
Reynolds v. Bordelon, 2014-2371, pp. 3-4 (La.6/30/15), 172, So.3d 607, 611 (emphasis added).
A trial judge cannot make credibility determinations on a motion for summary judgment. Hutchinson v. Knights of Columbus, Council No. 574-7, 2003-1533, p. 8 (La.2/20/04), 866 So.2d 228, 234. A party seeking a summary judgment is entitled to a favorable judgment only if “there is no genuine issue as to a material fact” and, thus, the “mover is entitled to judgment as a matter of law.” La. |fiC.C.P. art. 966(B). The credibility of a witness is a question of fact. Hutchinson, 2003-1533 at p. 8, 866 So.2d at 234. In deciding a motion ‘for summary judgment, the court must assume that all of the affiants are credible. Id.
The primary issue before us is whether NOCCA is entitled to judgment, as a matter of law, that Sislo’s alleged exposure did not “arise out of’ and did not occur “in the course of’ her employment with NOCCA.
An accident occurs “in the course of employment” when the employee sustains an injury while actively engaged in the performance of his duties during working hours, either on the employer’s premises or at other places where employment activities take the employee. Mundy v. Dep’t of Health & Human Res., 593 So.2d 346, 349 (La.1992). While coverage has been extended in some cases to include accidents during times for rest or lunch periods or before and after work on the *1207 employer’s premises, the principal criteria for determining course of employment are time, place and employment activity. Id.
In determining whether" an accident ■ “arises out of employment,” this Court must focus on the “character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the employment.” Id. “An accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment.” Id. The “principal objective” of the arising out of employment requirement “is to separate accidents attributable tó employment risks, which form the basis of the employer’s |7obligation under the compensation system, from accidents attributable to personal risks, for which'the employer should normally not be responsible.” Id.
As this Court explained in Basse v. Westinghouse Elec., Inc., 93-1898, p. 3 (La.App. 4 Cir. 5/17/94), 637 So.2d 1157, 1159:
The “course of employment” . and “arising out of employment” requirements cannot be considered in isolation from each other. A strong showing by the claimant with reference to the arise-out-of requirement may compensate for a relatively weak showing on the during-course-of requirement, or vice versa, [citations omitted]
Sislo argues on appeal that the hazard encountered in the NOCCA parking lot arises out of her employment where, because of her employment, she is more exposed to the risk posed by the hazard to a higher extent and'‘frequency than a member of the general public. According to Sislo’s argument, she remains in the course and scope of her employment even if members of the public are exposed to the same hazard and even if her injury occurs when she is leaving the building after clocking out of work.
NOCCA counters, that Sislo fails the “course of employment” test because she was not. actively engaged in employment duties at the time of her exposure, as she had already clocked out of work for the day when she was in the parking lot. Further, NOCCA contends that the exposure to airborne particulates did not “arise out of’ Sislo’s employment, as the risk of exposure was not exclusive to NOCCA employees or greater for NOCCA employees than for the general public. Rather, NOCCA contends ¡that the risk Sislo encountered was an “open air hazard” not causéd by her employer or employment. In support of this argument, NOCCA |ssubmitted as evidence an aerial photograph of the area and the affidavit of an employee of Mariza, a restaurant- located in the Rice Mill, attesting that the Mariza employee observed dust accumulating on- windows facing both NOCCA and Chartres Street, another public street.
In sum, NOCCA seeks to establish that other people, not employed by NOCCA, could have been exposed to the same dust, and that by extension, the risk of exposure was no greater for Sislo than for a non-employee. We do not agree that the record evidence before us is sufficient to ¡entitle NOCCA to summary judgment as a matter of law.
It is undisputed that Sislo had '“clocked out” of work at the time of the exposure but remained on NOCCA’s premises in NOCCA’s parking lot while walking to her vehicle. Relying on Supreme Court jurisprudence, this Court has stated:
Whether this accident in the employer’s parking lot before the commencement of a workshift falls within the .course and scope of plaintiffs employment is clearly answered by the Supreme Court in Carter v. Lanzetta, 249 La. 1098, 193 So.2d 259, 261 (1966):
*1208 < * * *'(I)t has long been well settled, not only here but in practically all states which have enacted Workmen’s Compensation statutes, that such statutes envision extension of coverage to employees from the time they reach the employer’s premises until they depart therefrom and that hours of service include a period when this might be accomplished within a reasonable interval. * * *’
Serean v. Kaiser Aluminum & Chem. Corp., 277 So.2d 732, 734-35 (La.App. 4 Cir.1973) (finding an accident compensable in which an employee slipped and . fell on a bottle in the. employer’s parking lot 45 minutes before the start of the 19employee’s shift). The Supreme Court has also found that an employee is considered in course and scope of employment if the injury occurs during a “reasonable period of. time for winding up his affairs” on the employer’s premises. Ardoin v. Cleco Power, L.L.C., 2010-815, p. 3 (La.7/2/10), 38 So.3d 264, 266 (reversing summary judgment finding no course and scope of employment where the employee was injured in a slip and fall on the premises of the employer, which permitted the employee to return three days after he was terminated to retrieve personal belongings).
Turning to the risk of exposure inquiry, NOCCA relies on Mundy, supra, in which the Louisiana Supreme Court held that the risk for a nurse who was attacked in a public elevator on her employer’s premises (a hospital) did not arise out of her employment, because the risk of a violent attack by a stranger was not greater for the nurse than for a non-employee. This Court in Bosse, however, distinguished Mundy, finding course and scope of employment for a city inspector who was injured getting off the elevator in City Hall on the floor where he worked. Bosse, 93-1898 at pp. 8-4, 637 So.2d at 1159. We held that a “physical defect in the premises of the employer is very different from an independent, random act of violence committed by an unrelated third party stranger. A random act of violence could occur anywhere, but a defect ⅛ the premises at the place of employment is ‘peculiar and distinctive’ to that location.” Id., 93-1898 at p. 4, 637 So.2d at 1159 (citing Templet v. Intracoastal Truck Line, Inc., 255 La. 193, 230 So.2d 74 (1969)(cited with approval in Mundy, 593 So.2d at 350)).
|1f>As we explained:
What the court is saying in Mundy is that the risk of random, violent crime is a risk that one encounters everywhere independent of location, i.,e., in Mundy the risk was not from the elevator at the place of employment. In the present case the risk was intrinsic to the place of Mr. Bosse’s employment. It was limited to that location and was only dangerous in that location. As an employee at that location, plaintiff must be presumed to “encounter” this risk “to a greater extent or frequency than by the general public.” Mundy, 593 So.2d at 350. Mr. Bosse had a much greater probability of sustaining the injury posed by the work place risk because his employment required him to be exposed to that risk to a greater extent and frequency than the general public. This means that the risk to Mr. Bosse arose out of his employment ...
Bosse, 93-1898 at pp. 4-5, 637 So.2d at 1159 (emphasis in original).
We further noted that “[although a member of the general public could also use the elevator, such a person would not be compelled by reason of his employment to expose himself to the risk posed by the elevator to the same extent and frequency as required of Mr. Bosse on a daily basis.” Id., 93-1898 at p. 5, 637 So.2d at 1159.
Citing this Court’s decision in Bosse, multiple courts have found course and *1209 scope of employment for accidents occurring in the employer’s parking lot. See, e.g., Francisco v. Harris Mgmt. Co., 94-136 (La.App. 3 Cir. 10/5/94), 643 So.2d 386; Mitchell v. Brookshire Grocery Co., 26,755 (La.App. 2 Cir. 4/5/95), 653 So.2d 202; Hingle v. Bd. of Administrators of Tulane Educ. Fund, 95-0134 (E.D.La.1/26/96), 1996 WL 32520, amended sub nom. Hingle v. Bd. of Adm’rs of Tulane Educ. Fund, 95-134, (E.D.La.5/24/96), 1996 WL 281355.[4]
|nWe do not read Bosse or its progeny so broadly as,to. require that a condition “peculiar and distinctive” to the employer’s premises, that is undisputedly present on such premises, must actually originate on or emanate from the employer’s premises. Nor do we find that an airborne hazard cannot be a defect in the employer’s premises. In the no-fault Louisiana workers’ compensation scheme, we are not convinced that the risk encountered on-the employer’s premises must be the employer’s “fault” in order for an accident to be compensable. See O’Regan v. Preferred Enterprises, Inc., 98-1602, p. 18 (La.3/17/00), 758 So.2d 124, 136 (explaining the no-fault remedy and quid pro, quo scheme provided by the Workers’ Compensation Act). Instead, we read Bosse to require that an employee on the employer’s premises must encounter the risk “to a greater extent and frequency than the general public.” See Bosse, 93-1898 at pp. 4-5, 637 So.2d at 1159.
Here, we do not find that NOCCA has shown, with undisputed facts, that the public was equally susceptible to the risk of dust exposure or that the airborne dust Sislo encountered was a risk encountered everywhere independent of location. Accordingly, we do not find that NGCCA met its burden to establish that it is entitled to judgment as a matter of law. The OWC erred in granting summary judgment in favor of NOCCA and ■ dismissing Sislo’s claim. Because of our conclusion, we need not address Sislo’s arguments regarding the threshold doctrine or alleged exposure to dust within the .NOCCA building containing Sislo’s office.
I igSislo also seeks review of the denial of her motion for summary judgment. The portion of the OWC judgment denying Sislo’s motion for summary judgment is generally a non-appealable, interlocutory judgment. See La. C.C.P. arts. 968 and 2083. The Louisiana Supreme Court has held, however, that “an interlocutory .ruling is reviewable on appeal of a final, appealable judgment in the case.” Louisiana High Sch. Athletics Ass’n, Inc. v. State, 2012-1471, p. 26 (La.1/29/13), 107 So.3d 583, 603 (citing People of the Living God v. Chantilly Corp., 251 La. 943, 207 So.2d 752, 753 (1968)). In the instant case, Sislo appealed the summary judgment dismissing all claims against NOCCA. That judgment is a final, appealable judgment. See La. C.C.P. arts. 968, 1915A(1) and A(3). Since Sislo appealed a final judgment, it is appropriate for this Court to review the correctness of the OWC’s denial of Sislo’s motion for summary judgment.
The record reflects that the OWC denied Sislo’s motion for summary judgment on the basis that genuine issues of material fact exist as to causation of Sislo’s medical condition. In support of her motion, Sislo introduced into evidence medical records from numerous providers. These providers included Dr. Stephen Kantrow, *1210 who opined that Sislo s lung condition was exacerbated by irritant dusts and fumes at work and linked her double lung , transplant to workplace exposure, and Dr. Matthew Schuette, who described Sislo’s condition as an exacerbation of -chronic lung disease and a self-limited event, which does not lead to progressive chronic lung conditions. Considering this disputed factual issue surrounding | ^causation of Sis-lo’s medical condition, we find no error in the OWC’s denial of Sislo’s motion for summary judgment.
In ruling oh Sislo’s motion, the OWC did not adjudicate whether Sislo’s lung condition qualifies as an accident, whether she is disabled and as of what date, whether she is entitled to workei-s’ compensation benefits and in what amounts, whether NOCCA reasonably controverted Sislo’s entitlement to benefits, and whether NOC-CA is liable for penalties, attorney’s fees, interest, and costs.' We are unable to review these matters where no finding was made by 'the OWC, and accordingly we do not address Sislo’s’remaining assignments of error.
For the reasons stated above, we reverse the portion of the OWC judgment granting summary judgment in favor of NOCCA, affirm the portion of the -OWC judgment denying the motion for summary judgment filed by Sislo, and remand this matter to the OWC for further proceedings consistent with this opinion.
REVERSED IN PART; AFFIRMED IN PART; REMANDED

. Sislo alleges in her 1008 that her condition was an "occupational disease.’’ Other pleadings and motions in the record, however, contain allegations that her exposure was an "accident.” Whether the exposure qualifies an "occupational disease” was not raised by the parties' as an issue on appeal.

. NOCCA also contends that Sislo’s injury does not qualify as an occupational disease, as she was not actively involved in the con- ' struction at the Rice Mill. This issue was not raised on-appeal.

. La. C.C.P. art. 966 was amended effective *1206 January 1, 2016. The instant motion for summary. judgment was filed and hearing was held prior to the effective date of these amendments, and we review this matter applying the article in effect at that time.

. NOCCA also argues that Sislo had alternative parking options and was not required to park in the location she chose at the time of the exposure. However, considering the particular facts of this case, we find no evidence in the record before us that parking elsewhere would have allowed Sislo to avoid the exposure in order to access the building where she worked.