Judge Daniel L. Dysart
|]In this worker’s compensation matter, appellant, Steven Frederick Washington, appeals the workers’ compensation judgment granting summary judgment in favor of Mr. Washington’s employer, Gallo Mechanical Contractors, L.L.b. (“Gallo”). For the reasons that follow, we affirm.
PROCEDURAL AND FACTUAL BACKGROUND
Mr. Washington initiated this matter by filing a Disputed Claim for Compensation (“Claim”) with the Office of Workers’ Compensation (“OWC”) on- January 8, 2016. In his Claim, Mr. Washington alleged that,- on December 7, 2016, while driving a shuttle for Gallo for a work-related project, he was assaulted by an employee of Savard Labor and Marine Personnel,[1] which resulted in injuries to Mr, Washington’s head, neck, back and shoulders. In response, Gallo and its insurer, Creative Risk Solutions (“CRS”)(hereafter, collectively referred to as “defendants”) filed an answer, admitting that no wage benefits or costs for medical treatment had been paid. As affirmative defenses, Gallo and CRS alleged:
According to defendant’s [sic] investigation, an employee of Gallo Mechanical, Steven Washington, was operating a shuttle at the time of this incident. He serves as the initial aggressor as he called the other person involved a “homosexual,” and then stating “do you know what I could do to -you that I learned in the pen?” Thus, Mr. Washington antagonized Mr. Rogers causing this altercation. Furthermore, this fight was not work-related. Because this incident involved fighting that is considered an intentional act and excluded by the Louisiana Workers’ Compensation Act, . there , exists no coverage under the Act for Mr. Washington’s aggressive behavior, the .altercation, and the resulting injury.
On February 11, 2016, Defendants filed a Motion for Summary Judgment (“Motion”) seeking á dismissal of the Claim on the basis that the injuries claimed by Mr. Washington did not occur “in the course of’ and did not “ar[i]se out of’ his employment. A hearing was scheduled for March 10, 2016 and Mr. Washington filed his opposition memorandum on March 3, 2016 (the certificate of service reflects that it was served on opposing counsel by mailing it on March 1, 2016). Defendants moved to strike Mr. Washington’s opposition memorandum as untimely and the attachment to it (excerpts of a February 11, 2016 hearing on Mr. Washington’s Expedited Motion for Medical Authorization[2]) because it is not *119 considered to be competent evidence under La. C.C.P. art. 966.
At the March 10, 2016 hearing on defendants’ Motion, counsel for Mr. Washington sought to file into the record an affidavit from Mr. Washington. After hearing argument of counsel, the OWC judge granted defendants’ motion to strike and their Motion. A written judgment was then issued on March 18, 2016 in favor of defendants, striking Mr. Washington’s opposition memorandum (and attachments) as untimely, and dismissing Mr. Washington’s claims against defendants. Mr. Washington then moved for a new trial which was denied after a 1,shearing and by judgment dated June 29, 2016. Mr. Washington timely filed this devolutive appeal.
DISCUSSION

Standard of review; Motions for Summary Judgment

This Court recently reiterated.the well-settled rule that a “summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the .trial court’s1 determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, arid whether the movant is entitled to judgment as a matter of law.” Vise v. Olivier House Prop. Mgmt., LLC, 16-0741 (La.App. 4 Cir. 4/12/17), 216 So.3d. 157, 159, 2017 WL 1365316 at *2, quoting Samaha v. Rau, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83.
Louisiana Code of Civil Procedure article 966 A(3) indicates that “a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” This is in keeping with the purpose of the summary judgment procedure, which is “to secure the just,' speedy, and inexpensive determination of every action.... ” La. C.C.P. art. 966 A(2). This “procedure is favored and shall be construed to accomplish these ends.” Id.
Under La. C.C.P. art. 966(D)(1), “if the mover will not bear the burden, of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s -claim, action, or defense, but rather to point 'out to the court that there is an absence of factual support for one or' moré | ¿elements essential to the adverse party’s claim, action, or defense.” Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 D(1).
In the instant matter, defendants do not carry the burden of proof for trial; accordingly, they need only point out an absence of factual support for one or more elements of Mr. Washington’s claim. Defendants contend that Mr. Washington cannot meet his burden in proving that the incident resulting in his alleged injuries arose out of his employment, an essential element of any workers’ compensation claim under La. R.S. 23:1031.[3] After our de novo review of the record, we agree.
At the outset, we address Mr. Washington’s argument that the trial court erred in *120 refusing to allow the transcript of the February 11, 2016 evidentiary hearing in opposition to defendants’ Motion and in failing to take judicial notice of Mr. Washington’s sworn testimony from that hearing. We note that, in his reasons for judgment issued on July 25, 2016, the OWC judge found, inter alia, that Mr. Washington’s opposition memorandum, served on March 1, 2016 [and filed in the record on March 3, 2016], was untimely.[4] The WC judge also found that Mr. Washington’s affidavit, sought to be introduced at the time of the hearing was untimely as well.
| .^Louisiana Code of Civil Procedure article 966 B(2) provides that “[ajny opposition to the motion [for summary judgment] and all documents in support of the opposition shall be filed and served in accordance with Article 1313 not less than fifteen days prior to the hearing on the motion.” There can be no dispute in this matter that Mr. Washington’s opposition memorandum, served on March 1, 2016 and filed into the record on March 3, 2016, was not timely.
Mr. Washington does not argue that the trial court erred in striking the opposition memorandum.[5] Rather, Mr. Washington argues that the trial court’s error was in failing to consider or take judicial notice of the testimony Mr. Washington gave at the February 11, 2016 hearing, as that “sworn testimony was part of the court record.” He contends that, even if the opposition memorandum and attachment were properly stricken as untimely, “compliance with the deadlines pursuant to... Art. 966(B)(2) was not necessary since it was already part of the court record.” He further maintains that the OWC judge was “compelled to consider [Mr. Washington’s] testimony in connection with” defendants’ Motion. We disagree.
Louisiana Code of Civil Procedure Article 966 D(2) provides, in pertinent part:
The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no ^objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider.
(Emphasis added).
Importantly, the official comments explain the revisions to subpart D (2):
*121 Subparagraph (D)(2) maintains most of the recent legislative changes to this Article, which change the law. Subpara-graph (D)(2) makes clear that the court can consider only those documents filed in support of or in opposition to the motion. This rule differs from Federal Rules of Civil Procedure, Rule 56(c)(3), which allows the court to consider other materials in the record.
Thus, unlike its federal counterpart, Article 966 D(2) does not allow the trial court to consider the record as a whole in deciding a motion for summary judgment. To the contrary, the comments specifically indicate that the court may only consider those documents filed either in support of or in opposition to a motion for summary judgment. The trial court, therefore, did not err in not considering the transcript of the February 11, 2016 hearing, even though it may technically be “in the record.” Because we find no error in the trial court’s failure to consider the transcript excerpts in deciding the Motion, we need not reach the issue of whether the transcript excerpts are competent summary judgment evidence under La. C.C.P. art. 966 A(4).
Turning to the merits of the Motion, we note that, in its reasons for judgment, the OWC judge concluded that “the uncontroverted affidavits attached to defendants’ motion for summary judgment indicated that the ‘altercation did not arise out of [Mr. Washington’s] employment because it was personal in nature.’” |7Mr. Washington maintains that the trial court erred in finding that the altercation resulting in his injuries did not arise out of his employment. He asserts that he was “on the clock, being compensated for his work by [Gallo], was seated in the driver’s seat of the shuttle and was struck from behind by a passenger of the shuttle.” Thus, he maintains that it “is indisputable” that “the injury occurred while [he] was in the course and scope of his employment.” In support of these factual allegations, however, Mr. Washington relies on and cites the February 11, 2016 hearing transcript excerpts. He further cites those excerpts to establish that he had been “involved in past employment related disputes with the initial physical aggressor” and that he had “previously reported Mr. Rogers to his supervisors for work-related infractions.”
As discussed, the February 11, 2016 transcript excerpts were properly excluded from consideration of the Motion and as such, these factual allegations by Mr. Washington cannot be considered by this Court.
Defendants do not dispute that Mr. Washington was seated in the driver’s seat of the shuttle when the incident occurred. Nor do defendants dispute that Mr. Washington and Mr. Rogers were employed by Gallo at the time of the incident.[6] The question turns on whether the altercation between Mr. Washington and Mr. Rogers falls within the parameters of La. R.S. 23:1031, and more particularly, “by accident arising out of and in the course of [Mr. Washington’s] employment.”
Our jurisprudence indicates that “[a]n accident occurs ‘in the course of employment’ when the employee sustains an *122 injury while actively engaged in the | ^performance of his duties during working hours, either on the employer’s premises or at other places where employment activities take the employee.” Sislo v. New Orleans Ctr. for Creative Arts, 16-0178, p. 6 (La.App. 4 Cir. 8/17/16), 198 So.3d 1202, 1206, writ denied, 16-1781 (La. 11/7/16), 209 So.3d 100, citing Mundy v. Dep’t of Health & Human Res., 593 So.2d 346, 349 (La. 1992). The Sislo Court explained:
In determining whether an accident “arises out of employment,” this Court must'focus on the “character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the employment.” “An accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not. engaged in the employment.” The “principal objective” of the arising out of employment requirement “is to separate accidents attributable to employment risks, which form the basis of the employer’s obligation under the compensation system, from accidents attributable to personal risks, for which the employer should normally not be responsible.”
Id., pp. 6-7, 198 So.3d at 1207, quoting Mundy, 593 So.2d at 349. In Mundy, the Supreme Court considered whether a nurse, on her way to work on the eleventh floor of Charity Hospital who was stabbed in the elevator by an unknown assailant, was injured in the course of her employment and whether the injury arose out of her employment. The Court first found that the plaintiff was not “in the course of’ her employment because she had not begun her employment duties at that time and she had not reached her work station or “the place where she would be under the supervision and control of her employer.” Id., 593 So.2d at 350.
As concerns whether the plaintiffs injury arose out of her employment, the Court found:
|⅜...[T]he “arising out of employment” inquiry reveals that the risk which gave rise to the injury was not greater for plaintiff than for a person not so employed. Moreover, while the conditions of the employment arguably caused plaintiff to be at the place of the attack at the time the attack occurred, there were other alternative routes, for her to reach her work station. Inasmuch as the risk which gave rise to the injury was a neutral-risk that was not related either to plaintiffs employment or to her personal life, the “arising .out of employment” showing by the employer, while not particularly strong, could be considered sufficient if there was a strong “course of employment” showing.

Id.

In our view, and as is supported by numerous decisions on the issue, for an altercation to. be considered having arisen out of employment, there must be a showing that it was related to the employment itself, and not related to matters unconnected and extraneous to the employment. Indeed; the workers’ compensation laws clearly exclude such altercations' not related -to the employment. La. R.S. 23:1031 E specifically states that “[a]n injury by accident should not be considered as having arisen out of the employment and thereby not covered by the provisions of this Chapter if the employer can establish that the injury arose out of a dispute with another person or employee over matters unrelated to the injured employee’s employment.”
Our jurisprudence also contemplates that worker’s compensation benefits may be awarded for injuries resulting from an altercation connected to employment. In Jackson v. Quikrete Prods., Inc., 01-1181 (La.App. 4 Cir. 4/17/02), 816 So.2d 338, for *123 example, a fistfight took place between the plaintiff and a co-worker who worked for a company which .produced cement, dirt and stone products. While there was a conflicting testimony as to what led to the altercation (the two parties involved had a history of personality conflicts), the I ^workers’ compensation judge concluded that “the altercation originated from [plaintiffs] instructions to [a] crew.”[7] Id., p. 7, 816 So.2d at 344. This Court affirmed this finding, concluding that “the [plaintiff] carried his burden of proof by a preponderance of the evidence that the altercation and injuries were caused or related to the employment and occurred during the course and scope of [the plaintiffs] employment.”, Id.
Similarly, in Stacy v. Minit Oil Change, 31,985 (La.App. 2 Cir. 6/16/99), 742 So.2d 929, an altercation between to workers at a car wash and oil change service station resulted in one employee striking the other with a pipe, causing a skull fracture. The injured employee sought workers’ compensation benefits. Because the court found that the altercation arose out of, a dispute over which of the two had authority over the other—that is, “one was simply accusing [the other] of trying to be the boss”—the “record supported] the WCJ’s finding that [the]injury did not arise out of a dispute with another employee over matters unrelated to ... [the] employment.” Id., 742 So.2d at 934.
The same result was reached in LaPrarie v. Pony Exp. Courier, 628 So.2d 192, 194 (La. App. 2 Cir. 1993), a case involving the injury of one employee at the hands of another and resulting .from a dispute between the two, stemming, in part, from the plaintiffs having taken over some of his co-worker’s delivery routes, although the co-worker continued to be paid for those routes. After the plaintiff discussed the issue with the payroll department, the plaintiff began to be paid for those routes and the co-worker’s pay was reduced. Finding that “[t]he evidence h presented indicate[d] that the altercation ... was at least partially related to and motivated by t[he co-workers’] employment ...[,] the hearing officer was [not] clearly wrong in concluding that the assault arose out of matters related to employment and awarding worker’s compensation.” Id. at pp. 194-95.
In this case, the only evidence properly considered by the OWC judge were the affidavits attached to defendants’ Motion. The affidavit of Mr. Rogers indicates the following: (1) on the morning in question, after boarding the shuttle bus and while -it was still in the parking lot, Mr, Washington “began talking about ‘gay’ stuff and implied that [he, Mr. Rogers] was gay;” (2) Mr. Washington talked about his experience when he was in prison and about how “the men would rape big guys like [him](Rogers) all of the time arid used graphic curse words to describe the male rape;” (3) Mr. Rogers advised Mr. Washington to “stop talking like that;” and (4) when Mr. Washington “continued to mouth off,” [he] pushed [Mr.] Washington on the backside of his head as if to say ‘be quiet.’” Mr. Rogers also attested to the fact that Mr. “Washington’s crude cursing remarks were a personal attack” on him.
. Mr. Rogers’ account of the .incident is corroborated by the affidavit of Michael Okray, another Gallo employee. Mr. Okray indicated that Mr. Washington “was talking about lewd homosexual acts in a very offensive, descriptive manner” and that, *124 after Mr. Rogers said “that he did not want to hear that talk,” Mr. Washington “continued to mouth off with lewd descriptive comments” and Mr. Rogers “slapped [Mr.] Washington on the side of his head with an open hand.”
Given that the nature of the verbal confrontation which occurred immediately before the physical contact between Mr. Rogers and Mr. Washington, |12we find that the OWC judge correctly concluded that the altercation did not arise out of Mr. Washington’s employment and was personal in nature. On that basis, the trial court properly granted summary judgment in favor of defendants. We find, as did the trial court, that the altercation and injuries were not caused by or related to Mr. Washington’s employment.[8] We therefore affirm the OWC court judgment.
While Mr. Washington does not assign as error the OWC judge’s denial of his motion for new trial, in the body of his brief he discusses the issue and argues that he is “entitled to a new trial... [because] this Honorable Court’s prior ruling was contrary to the law and evidence.” Mr. Washington then makes the same arguments as before; namely, that the trial court erred in refusing to consider both his affidavit, submitted at the hearing on defendants’ Motion and the transcript excerpts attached to his [untimely] opposition memorandum, which, he argues, demonstrate that genuine issues of material fact remain. He next argues, again, that his injuries were sustained in the course and scope of his employment with Gallo,
This Court recently reiterated the grounds upon which a new trial can be granted:
Under the Code of Civil Procedure, the grounds on which a motion for new trial may be granted are divided into two categories—peremptory and discretionary. The peremptory grounds are set forth in La. C.C.P. art.1972, which provides that the granting of a new trial is mandatory in the following three instances: (1) when the verdict or judgment appears clearly contrary to the law 11Hand evidence; (2) when the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial; and (3) when the jury was bribed or has behaved improperly so that impartial justice has not been done. The discretionary grounds are set forth in La. C.C.P. art.1973, which provides that the trial court has discretionary authority to grant a new trial “in any case if there is good ground therefore, except as otherwise provided by law.”
Autin v. Voronkova, 15-0407, pp. 3-4 (La. App. 4 Cir. 10/21/15), 177 So.3d 1067, 1069-70. In Autin, we noted that “[a]s a general rule, the trial court may summarily deny a motion for new trial if the motion simply reiterates issues thoroughly considered at trial.” Id., p. 7, 177 So.3d at 1070. (Citation omitted).
While here, the trial court held a hearing on Mr. Washington’s motion for new trial, the same principles apply. Mr. Washington did not present any new issues that were not thoroughly considered at the hearing on defendants’ Motion. The trial court, therefore, did not err in denying his motion for new trial. See, Bilbe v. Foster, 15-0302, p. 9 (La.App. 4 Cir. 9/9/15), 176 *125 So.3d 542, 548, writ denied, 2015-1849 (La. 11/16/15), 184 So.3d 29 (“a ruling on a motion for new trial [is reviewed] under an abuse of discretion standard”).
CONCLUSION
Based on the foregoing reasons, we affirm the judgment pf the OWC judge.
AFFIRMED

. The employee .who allegedly assaulted Mr. Washington, Lamar Rogers, appears to have been a co-worker of Mr, Washington and also an employee of Gallo, as evidenced by Mr, Rogers’ affidavit. Savard Labor and Marine Personnel does not appear to be a party to this lawsuit; while it was identified in the Claim as the employer of the person who allegedly assaulted Mr, Washington, the record is otherwise silent as to its involvement in this action,

. In his appellate brief, Mr, Washington admits that the OWC court denied his motion to authorize medical treatment.

. That statute provides, in pértinent part, that, when "an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, ón the conditions, and to the person or persons hereinafter designated.” La. R.S. 1031 A. (Emphasis added),

. With respect to excerpts of the transcript attached to the opposition memorandum, the OWC judge noted that a transcript from a hearing is not included as a document which may be considered in opposing a motion for summary judgment (which are limited to “pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions” under La. C.C.P. art. 966 A(4)). On that basis, too, the trial court refused to consider the transcript excerpts.

. Had Mr. Washington made such an argument, it would not have had merit. The Louisiana Supreme Court has made clear that [t]he time limitation established by La. C.C.P. art. 966(B) for the serving of affidavits in opposition to a motion for summary judgment is mandatory; affidavits not timely filed can be ruled inadmissible and properly excluded by the trial court.” Buggage v. Volks Constructors, 06-0175 (La. 5/5/06), 928 So.2d 536, 536. As the Buggage Court found: “[t]he court of appeal erred as a matter of law in considering a late-filed opposition to the motion for summary judgment, which consisted of a memorandum and a purported affidavit of plaintiff, in its de novo review of the merits of the summary judgment motion. The opposition had been disallowed by the trial court, which acted within its discretion in excluding an opposition filed a few minutes before the scheduled hearing on the motion.”

. The record is unclear as to whether Mr. Washington or Mr, Rogers were receiving pay from Gallo for the time period involved. We note that Mr. Rogers’ affidavit indicates that while he entered the shuttle bus at 6:10 a.m. for the purpose of being transported to the jobsite, he had "not yet clocked in for work but would do when he reached the jobsite at 6:30.” The question of whether Mr. Rogers (or Mr. Washington, for that matter) is considered to have been working at the time of the incident is not dispositive of the issues in this matter.

. The plaintiff testified that, after he gave the crew instructions, the co-worker advised them that they didn’t have to do what the plaintiff requested. The plaintiff bpgan wallc-mg to report this incident to his supervisor when the co-worker approached .him and a verbal altercation ensued, followed by a physical altercation.

. Again, we make no finding as to whether the altercation occurred during the "course and scope” of the employment; see footnote 6, supra. Even if we were to find that the altercation actually took place while Mr. Washington and Mr. Rogers were "on the clock,” the second factor ("arising out of... his employment, under La. R.S. 1031 (A) for which workers’ compensation may be awarded, cannot be met.