| | | |
|---|---|---|
| **VITA CHENET** | * | **NO. 2024-C-0431** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **COLGATE-PALMOLIVE** | * | |
| **COMPANY** | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-12536, DIVISION "L"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge
Rosemary Ledet, Judge Paula A. Brown, Judge Dale N. Atkins)

**BELSOME, J., DISSENTS WITH REASONS.**

**BROWN, J., DISSENTING WITH REASONS**

James M. Garner
John T. Balhoff, II
Curtis J. Case
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112

  COUNSEL FOR RELATOR, Colgate-Palmolive Company

Lance C. Unglesby
Adrian M. Simm, Jr.
Jamie F. Gontarek
UNGLESBY & CROMPTON, LLC
607 St. Charles Ave., Ste. 300
New Orleans, Louisiana 70130

Lindsey A. Cheek
THE CHEEK LAW FIRM LLC
650 Poydras Street, Suite 2310
New Orleans, LA 70130

  COUNSEL FOR RESPONDENTS, Vita Chenet (deceased), Wayne Chenet,
and Henry Chenet

**WRIT GRANTED; JUDGMENT REVERSED**
**SEPTEMBER 19, 2024**

DNA

DLD

RML

This is a mesothelioma case. Relator, Colgate-Palmolive Company ("Colgate"), seeks review of the trial court's June 18, 2024 judgment, which granted the Motion for New Trial filed by Respondents, Henry Chenet and Wayne Chenet. For the following reasons, we grant Colgate's writ application, and we reverse the trial court's judgment.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Vita Chenet ("Ms. Chenet") was diagnosed with malignant mesothelioma in October 2018, and subsequently filed suit against Colgate, as well as other manufacturers and sellers of talcum powder. Ms. Chenet alleged that she used Colgate's talcum powder product (Cashmere Bouquet) and that it was contaminated with asbestos, which caused her to contract mesothelioma. When Colgate answered Ms. Chenet's suit, it denied that its talcum powder contained asbestos, and offered an alternative defense, i.e., that Ms. Chenet contracted mesothelioma from exposure to asbestos through her father's employment and because her family lived in housing on the Higgins Shipyard property in the 1940s. Ultimately, Ms. Chenet died in February 2019 at the age of 83, and her adult sons, Wayne Anthony Chenet and Henry Engler Chenet, III (hereinafter collectively

1

"Chenets"), were substituted as plaintiffs in this litigation. Following discovery, the Chenets filed a motion for partial summary judgment, which the trial court granted. In that judgment, the trial court made the following two findings, which the parties agree are the law of the case: (i) Ms. Chenet was diagnosed with mesothelioma; and (ii) a cause of Ms. Chenet's mesothelioma is exposure to asbestos.

In March 2024, a three-week jury trial was held in this case. At the end of the trial, the jury answered no to the first jury interrogatory, which asked whether the Chenets proved by a preponderance of the evidence that Colgate's Cashmere Bouquet was contaminated with asbestos. Given that answer, the jury received instructions to stop, which the jury did. Thereafter, the trial court rendered judgment in Colgate's favor, thereby dismissing the Chenets' claims against Colgate.

On April 24, 2024, the Chenets filed a Motion for New Trial, wherein they asserted "that the April 15, 2024 final Judgment was clearly contrary to the law and evidence, thereby requiring [the] Court to grant [them] a new trial pursuant to La. C.C.P. art. 1972(1)." They also contended "that good grounds exist[ed]" for the trial court to grant them a new trial pursuant to La. C.C.P. art. 1973. In support, they cited, among other things, the alleged improper testimony at trial of Colgate's expert pathologist, Dr. Richard Attanoos ("Dr. Attanoos"). In response to the Chenets' counsel's questions in voir dire, Dr. Attanoos testified as follows:

> And if you place a worker in a shipyard, the literature the world over will tell you consistently they are at increased risk of mesothelioma and other asbestos-related diseases. In fact, Ms. Chenet's father died, by every likelihood, of an asbestos-related disease. He had lung cancer, which is, in the setting, is an asbestos related disease. He was a shipyard worker during World War II.

2

Of note, the trial court ultimately struck Dr. Attanoos' testimony from the record and instructed the jury not to consider it. According to the Chenets, the ultimate issue for the jury to decide was causation, i.e., whether Ms. Chenet's mesothelioma was caused by exposure to asbestos in Colgate's Cashmere Bouquet or by her exposure to asbestos through her father's work at Higgins Industries' Shipyard when she was a young child. For this reason, the Chenets argued that Dr. Attanoos' testimony confused the jury and resulted in a miscarriage of justice, warranting the granting of a new trial.

In its June 18, 2024 judgment, the trial court agreed with the Chenets and granted their Motion for New Trial. In explaining its decision to grant the Chenets' Motion for New Trial, the trial court listed the following reasons for judgment:

1. The ultimate issue for the jury to decide in this case was whether Ms. Chenet's mesothelioma was caused by exposure to asbestos in Colgate's Cashmere Bouquet, or whether Ms. Chenet's mesothelioma was caused by exposure to asbestos through her father's work at Higgins Industries shipyard when she was a young child—which was Colgate's alternative exposure defense

2. During the last day of trial, Colgate called its last witness, Dr. Richard Attanoos, who testified before the jury that:

   . . . And if you place a worker in a shipyard, the literature world over will tell you consistently they are at increased risk of mesothelioma and other asbestos-related diseases. In fact, Ms. Chenet's father died, by every likelihood, of an asbestos-related disease. He had lung cancer, which is, in the setting is an asbestos-related disease. He was a shipyard worker during World War II. . .

3. There was no foundation for Dr. Attanoos' said "in fact" opinion. Indeed Dr. Attanoos' opinion concerning the circumstances and cause of Ms. Chenet's father's death had never been referenced by any witness or attorney throughout the previous three weeks of trial, it was unsolicited, it was a new opinion, it was never previously disclosed in any expert report or deposition, and it was never previously disclosed to

3

this Court or to the Plaintiffs in violation of this Court's rules concerning expert opinions at trial.

4. There is no evidence in the record that Dr. Attanoos ever reviewed Ms. Chenet's father's medical records prior to giving an opinion about the cause of Ms. Chenet's father's death.

5. The Court was unequivocally floored by Dr. Attanoos' testimony, and when the Court heard that testimony after three weeks of trial in this case, it made the Court cringe – particularly considering that Dr. Attanoos is probably one of the best qualified experts this Court ever encountered.

6. The Court gave Colgate an opportunity to allow Dr. Attanoos to explain on the record the underlying factual basis for his opinion concerning Ms. Chenet's father's cause of death but Colgate rejected that opportunity.

7. The Court finds that Dr. Attanoos' improper testimony concerning the circumstances and cause of Ms. Chenet's father's death was "highly prejudicial" to the Plaintiffs['] case because such testimony could make the jury believe that, because Ms. Chenet's father died of an asbestos-related disease as a result of working at or living near Higgins, then Ms. Chenet's asbestos-related disease must have also been caused as a result of living near Higgins.

8. Compounding the prejudicial effect of Dr. Attanoos' improper testimony concerning the circumstances and cause of Ms. Chenet's father's death is the fact that the jury was not expeditiously told to disregard this foundationless and inadmissible testimony. Almost immediately after Dr. Attanoos gave this testimony, Plaintiffs' counsel orally moved to strike Dr. Attatnoos' improper testimony, which the Court denied, and then the Court excused the jury so that they could go on their lunch break. The Court believes that allowing the jurors to go to lunch right after they heard Dr. Attanoos' improper testimony gave the jurors the time and opportunity to consider, discuss, and be impacted by Dr. Attanoos' improper testimony.

9. While the Court did later instruct the jury to disregard Dr. Attanoos' improper testimony concerning the circumstances and causes of Ms. Chenet's father's death, the Court believes that its corrective instruction came too late and was insufficient to cure the prejudicial effect of the jury hearing Dr. Attanoos' improper testimony relating to an ultimate issue in this case.

10. Given Dr. Attanoos' impressive qualifications and experience, and the Court's belated corrective instruction, the Court

believes that in rendering its jury verdict, the jury may have erroneously given weight to, considered, and been impacted by Dr. Attanoos' improper opinion testimony concerning the circumstances and cause of Ms. Chenet's father's death.

11. The Court believes that the prejudicial effect of Dr. Attanoos' improper testimony had a substantial effect on the outcome of this case and made it impossible for the jury to reach a proper verdict.

12. A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law, pursuant to La. C.C.P. art. 1973.[1]

Subsequently, Colgate timely filed its writ application with this Court.

## ASSIGNMENTS OF ERROR

In its writ application to this Court, Colgate asserts four assignments of error:

(1) The district court erred by failing to apply the harmless error standard when it ordered a new trial based upon stricken evidence that had nothing to do with the question the jury ultimately decided.

(2) The district court erred when it granted a new trial without making the requisite finding of a miscarriage of justice.

(3) The district court erred when it ordered a new trial after [the Chenets] failed to move contemporaneously for a mistrial.

(4) The district court erred when it ordered a new trial after [the Chenets] failed to make other contemporaneous objections, including the prejudicial nature of testimony and the timing of the court's curative instruction.

Because all four of Colgate's assignments of error pertain to the trial court's decision to grant a new trial, we begin our discussion with the principles and standard of review applicable to motions for new trial.

---

[1] In the "Judgment with Reasons" presented for the trial court judge's signature by the Chenets, number 12 read: "The Court finds that a miscarriage of justice has occurred, and therefore the Court will exercise its discretion and grant Plaintiffs a new trial pursuant to La. C.C.P. art. 1973." However, the trial court replaced that proposed language with the language included here.

5

# DISCUSSION

## *Principles and Standard of Review Applicable to a Motion for New Trial*

Louisiana Code of Civil Procedure Article 1971 states, in pertinent part, that "[a] new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only." The Louisiana Civil Code provides both peremptory and discretionary grounds for the grant of a new trial. In terms of peremptory grounds, La. C.C.P. art. 1972 outlines the followings:

> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
>
> (1) When the verdict or judgment appears clearly contrary to the law and the evidence.
>
> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
>
> (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

Discussing the discretionary grounds, La. C.C.P. art. 1973 states that "[a] new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." "[W]ithin ten days from the time it is submitted for decision," the trial court must decide a motion for new trial. La. C.C.P. art. 1979. If the trial court "grants a motion for a new trial, it shall specify each of its reasons in the order." *Id.* The party who files the motion for new trial bears the burden of proof. *Lepree v. Dorsey*, 2022-0853, p. 23 (La. App. 4 Cir. 8/11/23), 370 So.3d 1191, 1205 (first citing *Jackson v. Wise*, 2017-1062, p. 18 (La. App. 1 Cir. 4/13/18), 249 So.3d 845, 856; and then citing *Porche v. Winn-Dixie La., Inc.*, 1993-2075, p. 5 (La. App. 1 Cir. 10/7/94), 644 So.2d 699, 702).

6

As this Court has previously held, a trial court has wide discretion in deciding whether to grant or deny a motion for new trial. *Lepree v. Dorsey*, 2022-0853, p. 22 (La. App. 4 Cir. 8/11/23), 370 So.3d 1191, 1204-05 (quoting *Occidental Props. Ltd. v. Zufle*, 2014-0494, p. 11 (La. App. 5 Cir. 11/25/14), 165 So.3d 124, 13), *writ denied*, 373 So.3d 982, 2023-01238 (La. 12/5/23). Because the trial court has such wide discretion in deciding a motion for new trial, "an appellate court 'reviews a ruling on a motion for new trial under an abuse of discretion standard of review.'" *Id.* at p. 22, 370 So.3d at 1205 (quoting *Sunset Harbour, LLC v. Brown*, 2022-0572, p. 9 (La. App. 4 Cir. 1/9/23), 356 So.3d 1167, 1173. The appellate court applies the abuse of discretion standard of review "regardless [upon] which ground—peremptory or discretionary—the new trial motion is based." *Id.* (quoting *Autin v. Voronkova*, 2015-0407, p. 4 (La. App. 4 Cir. 10/21/15), 177 So.3d 1067, 1070). This standard of review is "highly deferential," but a trial court abuses its discretion "if its ruling is based on an erroneous view of the law." *Id.*

Additionally, the Louisiana Supreme Court has cautioned that "[e]ven in light of this wide discretion of the trial court, that discretion is limited, as the trial court cannot freely interfere with any verdict with which it disagrees." *Guillory v. Lee*, 2009-0075, p. 38 (La. 6/26/09), 16 So.3d 1104, 1131 (citing *Davis v. Wal-Mart Stores, Inc.*, 2000-0445, p. 10 (La. 11/28/00), 774 So.2d 84, 93). Rather, the trial court's "discretionary power to grant a new trial must be exercised with considerable caution" because "a successful litigant is entitled to the benefits of a favorable jury verdict." *Martin v. Heritage Manor S. Nursing Home*, 2000-1023, p. 3 (La. 4/3/01), 784 So.2d 627, 630 (quoting *Davis*, 2000-0445, p. 10, 774 So.2d at 93). Moreover, because "[f]act finding is the province of the jury . . . the trial court

must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility." *Id.* Accordingly, the trial court should not set aside the jury's verdict "if it is supportable by any fair interpretation of the evidence." *Id.* This Court has held that potential jury confusion may constitute a ground for granting a new trial. *Provosty v. Arc Constr., LLC*, 2015-1219, pp. 8-9 (La. App. 4 Cir. 11/2/16), 204 So.3d 623, 629-30. However, this Court has further explained that such confusion must "be substantial enough to mislead the jury to the extent that it was prevented from dispensing justice." *Martinez v. LG Electronics U.S.A, Inc.*, 2024-0445, p. 5 (La. App. 4 Cir. 8/2/24), ___ So.3d ___, ___, 2024 WL 3633518, at *3 (quoting *Provosty*, 2015-1219, p. 7, 204 So.3d at 628) (internal quotation marks omitted). The confusion must also be "unreasonable and a clear illustration of [the jury's] failure to impartially apply the reasoning faculty on the facts before it." *Id.* (quoting 66 C.J.S. § 107).

With these principles and standard of review in mind, we turn to Colgate's assignments of error. Based on our review of the assignments of error and the record, the sole issue presented by Colgate's writ application is whether the trial court properly granted the Chenets' Motion for New Trial based on Dr. Attanoos' testimony regarding Ms. Chenet's father's lung cancer. We find that the trial court abused its discretion in granting a discretionary new trial under La. C.C.P. art. 1973 for two reasons: (i) the lack of relevance of the objectionable testimony; and (ii) the lack of a miscarriage of justice finding. That is, we agree with Colgate's first and second assignments of error.

***Assignment of Error Number One: Lack of Relevance of the Objectionable Testimony***

In its first assignment of error, Colgate asserts that the trial "court erred by failing to apply the harmless error standard when it ordered a new trial based upon stricken evidence that had nothing to do with the question the jury ultimately decided." This assignment of error has merit. Contrary to the Chenets' contention, the issue presented at trial was not confined to causation. Rather, the Chenets had the burden of proving two distinct elements to establish Colgate's liability, namely (1) contamination—Cashmere Bouquet was contaminated with asbestos; and (2) causation—the asbestos in Cashmere Bouquet caused Ms. Chenet's mesothelioma. Here, the law of the case established only that asbestos was a cause of Ms. Chenet's mesothelioma. The jury first had to decide whether Cashmere Bouquet was contaminated with asbestos and, if so, whether that exposure caused her mesothelioma. The jury answered no to the first question as to whether Cashmere Bouquet was contaminated and, therefore, the second question as to causation was pretermitted. Because Dr. Attanoos' objectionable testimony had bearing only on the issue of causation, his testimony was irrelevant to the contamination issue that the jury decided and had no effect on the jury's decision. Accordingly, the trial court abused its discretion in granting the Chenets' Motion for New Trial.

***Assignment of Error Number Two: Lack of Miscarriage of Justice Finding***

In its second assignment of error, Colgate contends that the trial court erred in granting the Chenets' Motion for New Trial because it did not make the requisite finding of a miscarriage of justice. We agree. In its reasons for judgment, the trial court stated that it was granting the Chenets' Motion for New Trial under La. C.C.P. art. 1973's discretionary grounds. This Court and the Louisiana

Supreme Court have held that a trial court should grant a motion for new trial under La. C.C.P. art. 1973 if there is a finding of a "miscarriage of justice." *McBride v. Lichtenstein*, 2017-0715 (La. App. 4 Cir. 12/5/18), 260 So.3d 658, 676 (first citing La. C.C.P. art. 1973; and then citing *Pitts v. La. Med. Mut. Ins. Co.*, 2016-1232, p. 9 (La. 3/15/17), 218 So.3d 58, 65); *Lamb v. Lamb*, 430 So. 2d 51, 53 (La. 1983). This Court has further held that without there being such a finding of a "miscarriage of justice," a new trial is not warranted. *Hebert v. C.F. Bean Corp.*, 2000-1029, p. 3 (La. App. 4 Cir. 4/25/01), 785 So.2d 1029, 1031. Further, the facts must actually support a finding that "a miscarriage of justice . . . would otherwise occur." *Webster v. Hartford Accident & Indemn. Co.*, 2021-610, p. 3 (La. App. 5 Cir. 11/15/21), 2021 WL 5869565, at *3 (citing *In re Gramercy Plant Explosion at Kaiser*, 2004-1151, p. 17 (La. App. 5 Cir. 3/28/06), 927 So.2d 492, 502).

We note that in the matter *sub judice*, the trial court expressly rejected the Chenets' suggestion that it include a miscarriage of justice finding in its written reasons for judgment. The facts and circumstances presented herein do not present a miscarriage of justice because, as previously explained, Dr. Attanoos' objectionable testimony was irrelevant to the contamination issue the jury decided; the trial court struck the objectionable testimony; and the trial court admonished the jury not to consider the objectionable testimony. Though the trial court expressed concern in its written reasons for judgment that the timing of its admonition to the jury (after the jury returned from lunch) might have accentuated the jury's confusion regarding the objectionable testimony, we find this of no consequence. Again, Dr. Attanoos' objectionable testimony was not relevant to the sole issue the jury decided of asbestos contamination and thus could not have confused the jury. Further, as previously explained, jury confusion must be

10

"substantial enough to mislead the jury to the extent that it was prevented from dispensing justice" or "a clear illustration of [the jury's] failure to impartially apply the reasoning faculty on the facts before it." *Martinez v. LG Electronics U.S.A, Inc.*, 2024-0445, p. 5 (La. App. 4 Cir. 8/2/24), ___ So.3d at ___, 2024 WL 3633518, at *3 (first quoting *Provosty*, 2015-1219, p. 7, 204 So.3d at 628; and then quoting 66 C.J.S. § 107). Neither of these circumstances is present in this matter given the irrelevance of the testimony to the jury's conclusion on the contamination issue. Therefore, the facts do not support a finding that there was a miscarriage of justice so as to justify the trial court's grant of the Chenets' Motion for New Trial.

Having already found merit in Colgate's first and second assignments of error, we pretermit discussion of its third and fourth assignments of error.

## DECREE

For the foregoing reasons, we grant Colgate's writ application and reverse the trial court's June 18, 2024 judgment, which granted the Chenets' Motion for New Trial.

**WRIT GRANTED; JUDGMENT REVERSED**

11