| VITA CHENET | * | NO. 2024-C-0431 |
|---|---|---|
| VERSUS | * | COURT OF APPEAL |
| COLGATE-PALMOLIVE COMPANY | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * | |
| | * | |

* * * * * * *

BELSOME, J., DISSENTS WITH REASONS.

The foundation of the majority's reasoning is that Dr. Richard Attanoos's ("Attanoos's") objectionable testimony was irrelevant to the contamination of Colgate-Palmolive Company's ("Colgate's") product, which was the sole issue that the jury decided. I disagree with the reasoning of the majority.

The majority acknowledges that a partial summary judgment granted prior to trial determined that Vita Chenet ("Ms. Chenet") died from mesothelioma that was caused by inhalation of asbestos crystals. Both parties have postulated this case as a contest between two possible sources of asbestos exposure. Plaintiffs contend that defendant's product, Cashmere Bouquet[1], was the source of the asbestos that killed Ms. Chenet. Colgate's position is that asbestos contamination from Higgins Shipyard was the cause.

In opening statements in the trial, both parties told the jury that Ms. Chenet's exposure to asbestos came either from defendant's body powder or from the shipyard where her father worked. Defense counsel made the following representations to the jury:

> The jury would see evidence that Ms. Chenet's father was bringing asbestos home from Higgins shipyard to her every day for years;

---

[1] Cashmere Bouquet was a cosmetic talcum powder manufactured and sold by Colgate from 1871 until 1995.

1

Ms. Chenet's doctor would testify that she was exposed to asbestos at Higgins Shipyard;

That evidence would show that some Higgins contained 85% asbestos; and that Dr. Herfel would testify that working at a shipyard increases mesothelioma risk, living near a shipyard increases mesothelioma risk, and living in a household where someone working in a shipyard and brings it home increases the risk of mesothelioma; and

Expert testimony would show that Ms. Chenet was exposed to asbestos at the shipyard.

After three weeks of trial, Colgate had failed to provide any admissible evidence that Ms. Chenet had exposure to asbestos as a child when her father, Camille Carnaggio, Sr. ("Mr. Carnaggio") worked at Higgins Shipyard. On the other hand, plaintiffs had presented the testimony of Dr. William Longo that 100% of the Cashmere Bouquet containers he tested contained trace amounts of chrysotile asbestos.

Q. …100 percent of the Cashmere Bouquet you tested did have chrysotile asbestos?
A. Correct.

There was no proof that Mr. Carnaggio encountered asbestos in his work. Ms. Chenet's sister, Gertrude Carnaggio ("Trudy") testified that she, "didn't think [Mr. Carnaggio] physically worked on the boat. I think he was more like a brain." When asked what she thought Mr. Carnaggio did at Higgins, she responded: "I don't really know. But I think he worked in the office." There was also testimony that the boats built in the Higgins Shipyard where he worked were made of plywood instead of steel and asbestos. Further, there was no evidence adduced at trial that Ms. Chenet had any significant exposure to her father's clothing during the time that she shared with him during the single year that she lived near the shipyard. Ms. Chenet's treating physician specifically rejected and denied Colgate's representation that he determined that Ms. Chenet encountered asbestos from the shipyard. The treating physician, Dr. Henry Jackson ("Dr. Jackson"), testified:

Q: Now the people who said she was exposed to asbestos at Higgins was not us, it was her doctor, and it was her who said that. Is that accurate?

A: No, it's not.

…

Q: [In opening statement, Colgate said] Dr. Jackson believes it was clear just like the testimony shows she believes that's why she got it—talking about Higgins.

A: That's not accurate.

Dr. Jackson added that Ms. Chenet did not tell him that her father had worked in a shipyard or made any comment regarding the shipyard. In fact, Dr. Jackson said that he asked Ms. Chenet whether she had worked in a shipyard. When asked if he had evidence that Ms. Chenet was exposed to shipyard asbestos, he replied, "I don't. It was simple speculation on my part, never substantiated and unfortunately the fact is that once something like that gets into a medical record, it tends to perpetuate itself forever."

With that record behind him, halfway through the last day of a three-week trial, Colgate's expert, Dr. Richard Attanoos, blurted out the testimony that formed the basis of plaintiffs' motion for new trial. He opined that Ms. Chenet was at increased risk of asbestos-related diseases because of her father's shipyard work during World War II. He also testified that "by every likelihood" Mr. Carnaggio died of lung cancer, "which is, in the setting, is an asbestos-related disease", intimating that he died of mesothelioma. This opinion was given without laying any foundation in the form of an examination of the father's cause of death, his medical records or the type of shipyard work he performed.

Despite the fact that the defense was not able to make good on any of opening statement promises of evidence to come, Attanoos gave his opinion that assumed all those facts had been proven. Attanoos's comment was not even responsive to the question that was posed. In granting the plaintiffs' motion for new trial, the trial court commented that there was no factual

support for the opinion that shipyard asbestos exposure was a factor that the jury should weigh in determining whether the source of contamination was more likely than not, Colgate's product, Cashmere Bouquet.

The jury's first interrogatory called on it to decide whether Cashmere Bouquet was contaminated. The jury was instructed to stop deliberating if it found that Cashmere Bouquet was not contaminated. After finding that the powder was not contaminated, the jury ceased its deliberation and the trial ended.

The majority holds that the issue of shipyard contamination and Attanoos's opinion are not relevant to the jury's decision that Cashmere Bouquet is not contaminated. I disagree with the majority and I agree with the trial court that the comment was both relevant and highly prejudicial.

Relevance is defined by La. C.E. art. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." It was a pre-determined fact that Ms. Chenet died as a result of exposure to asbestos. Given the binary choice of shipyard or Cashmere Bouquet, the jury implicitly chose shipyard. Since there was no *admissible* evidence supporting the shipyard as a source of Ms. Chenet's cancer, it becomes apparent that the jury determined that the inadmissible opinion by Attanoos was considered and was, in fact, determinative of the outcome. Attanoos's opinion meets La. C.E. art. 401's definition of relevance because it is the only evidence available that could have led the jury to determine that it was more probable that the source of the fatal carcinogen was the shipyard, not the cosmetic powder.

The Code of Evidence cautions that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." La. C.E. art. 403. The trial court gave a curative instruction to the jury to disregard Attanoos's opinion. However,

4

the judge acknowledged in his reasons for judgment that the instruction to the jury was given too late to overcome the prejudicial effect of the testimony. Under the best circumstances, expert opinion that includes an assumption of facts not in evidence, can hardly be "unheard" or ignored in the contemplation of the jury.

A new trial may be granted upon motion of a party or by the court on its own motion. A new trial is mandatory when the verdict or judgment appears clearly contrary to the law and the evidence. La. C.C.P. arts. 1971 and 1972(1). Trial courts are also given discretion to grant a new trial "in any case if there is good ground therefor". La. C.C.P. art. 1973.

In the case before us, there is no admissible evidence that favors Colgate's version of medical causation. Dr. Longo provided evidence that Cashmere Bouquet could have been the cause of Ms. Chenet's mesothelioma. Plaintiffs' proposition is supported by that expert opinion evidence. Colgate's proposition is supported by no evidence except Attanoos's inadmissible opinion. Therefore, the jury's finding favoring Colgate is contrary to the facts offered at trial and a new trial is mandatory in nature.

Even if the grounds for the new trial were discretionary, longstanding jurisprudence informs us that the trial court has "wide discretion" to grant a judgment notwithstanding the verdict. "The trier of fact is afforded much discretion in assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand." Bouquet v. Wal-Mart Stores, Inc., 08-0309, p. 5 (La. 4/4/08), 979 So. 2d 456, 459. Our court has previously and often held that the standard of review for the grant of a motion for new trial is abuse of the trial court's wide discretion. This is true whether the new trial is based on mandatory grounds or discretionary grounds. Autin v. Voronkova, 15-0407, p. 4 (La. App. 4 Cir. 10/21/15), 177 So. 3d 1067, 1070. "In a motion for new trial under either La. C. C. P. arts. 1972 or 1973, the trial court may

evaluate the evidence without favoring either party; it may draw its own inferences and conclusions; and evaluate witness credibility to determine whether the jury erred in giving too much credence to an unreliable witness." McBride v. Lichtenstein, 17-0715, p. 27 (La. App. 4 Cir. 12/5/18), 260 So. 3d 658, 676. In granting a new trial on discretionary grounds, it is necessary for the trial court to state an articulable reason or reasons as to why the trial court is exercising its discretionary powers. *Martinez v. LG Electronics U.S.A., Inc.*, 24-0445, p. 5 (La.App. 4 Cir. 8/2/24), ___ So.3d___, 2024, WL 36335182024.

In the case before us, the trial court articulated his reasoning as follows:

The ultimate issue for the jury to decide in this case was whether Ms. Chenet's mesothelioma was caused by exposure to asbestos in Colgate's Cashmere-Bouquet, or whether Ms. Chenet's mesothelioma was caused by exposure to asbestos through her father's work at Higgins Industries shipyard when she was a young child—which was Colgate's alternative exposure defense.

During the last day of trial, Colgate called its last witness, Dr. Richard Attanoos, who testified before the jury that:

... And *if you place a worker in a shipyard, the literature the world over will tell you consistently they are at increased risk of mesothelioma and other asbestos-related diseases. **In fact, Ms. Chenet's father died, by every likelihood, of an asbestos-related disease. He had lung cancer**, which is, in the setting, is an asbestos-related disease. He was a shipyard worker during World War II...*

There was no foundation for Dr. Attanoos's said "in fact" opinion. Indeed, Dr. Attanoos's opinion concerning the circumstances and cause of Ms. Chenet's father's death had never been referenced by any witness or attorney throughout the previous three weeks of trial, it was unsolicited, it was a new opinion, it was never previously disclosed in any expert report or deposition, and it was never previously disclosed to this Court or to the Plaintiffs in violation of this Court's rules concerning expert opinions at trial.

There is no evidence in the record that Dr. Attanoos ever reviewed Ms. Chenet's father's medical records prior to giving an opinion about the cause of Ms. Chenet's father's death. (Emphasis added)

The reasons announced by the trial court show insight into the relevance and impact of Attanoos's opinion. When a jury hears the witness's impressive credentials followed by the court's declaration that the witness is an expert in his

6

or her field, the jury trusts that the judge and the attorneys have properly tested the credentials and they rely on the opinions of the expert.

In this case, however, the witness expounded an opinion that is nothing more than speculation, fabrication, and supposition. This type of testimony is never permitted in a trial. In every case, juries are instructed that they are not to consider any information except the evidence adduced in the courtroom. The trial judge is the gatekeeper of that evidence. In this case, it is clear that the trial judge recognized that Attanoos had presented the jury with evidence that had no more credibility than neighborhood gossip. He noted that Mr. Carnaggio died of lung cancer and from that he inferred a cornucopia of opinions, none of which were supported by any evidence proven at trial. The functional equivalent of Attanoos's opinion would be to permit plaintiff to introduce expert testimony that asbestos is sometimes found in mines that produce talc, therefore, Colgate's talc had asbestos that caused Ms. Chenet's mesothelioma. Or, let us suppose that during deliberation, one of the jurors commented that he knew that Mr. Carnaggio died from mesothelioma and that he almost certainly brought asbestos fibers into the home where Ms. Chenet lived. For either statement to reach the jury is impermissible. Both situations should properly result in a new trial because they would be prejudicial to a fair finding of facts by the jury.

The majority holds that the trial court made no finding of a miscarriage of justice because Attanoos's offensive comment was not relevant. In fact, it appears that the comment was not only relevant, but the only possible source of the jury's finding that Ms. Chenet's mesothelioma was caused by anything other than Cashmere Bouquet. As outlined above, the jury's finding cannot be squared with the facts proven at trial. This is both a miscarriage of justice that supports the trial court's discretion in granting a new trial and a verdict clearly contrary to the law and the evidence that supports a mandatory judgment granting a new trial.

7

The majority pretermitted discussion of Colgate's other assignments of error as moot based on the finding that there was no miscarriage of justice. I would pretermit discussion of those assignments as lacking in merit.

The record in this case shows clearly that the trial court properly exercised its discretion to grant a new trial. We are compelled by the facts and longstanding case law to affirm the decision below and deny this writ.